JOHN MATHER & others *vs.* HORATIO G. F. CORLISS, executor

After signing and acknowledging a deed of land, containing a covenant that the grantor
or his executors or administrators should pay a sum of money to the grantee, the grantor
delivered it to a third person for the grantee, and this person so received it from the
grantor, and kept it till delivered by him to the grantee after the grantor's death,
which occurred two days after said execution of the deed. *Held,* that the estate vested
in the grantee, and the covenant became binding on the grantor, upon the delivery of
the deed to the third person, although he was not employed by the grantee to receive it
for him; and that the consideration of it was not open to inquiry.

CONTRACT by John Mather, Thomas Mather and Thomas
Berry, the grantees named in a deed of Joshua Mather, dated
June 20, 1865, against the executor of his will, on a covenant
in the deed for the payment of $15,000 to the plaintiffs. Writ
dated October 1, 1867. The case was reserved by *Wells,* J.,
for the determination of the full court, on a statement of agreed
facts, of which the following is the substance of the material
parts :

Joshua Mather died June 22, 1865, having made his last will
Tune 11, and a codicil June 20, which were proved and allowed
in the probate court for Middlesex October 10, and of which the
defendant was duly appointed executor. On June 20, before
executing the codicil, he signed and acknowledged before a
magistrate a deed to the plaintiffs. Previously to making said
deed, Joshua Mather wrote a letter to the plaintiff Thomas
Berry, then in England, proposing to convey to the plaintiffs
three undivided fourths of his mill property, and that they should
come to Lowell and carry on the manufacturing business, which
letter was received by Berry in England June 10, 1865.

This deed, after conveying to the plaintiffs, and their heirs
and assigns, three undivided fourth parts of all the grantor's mill
property on River Meadow Brook in Lowell, and three undi-
vided fourth parts of all his real estate in Chelmsford and West-
ford, particularly his land and dam and mill privilege at the
outlet of Baptist Pond, contained the covenant in question (pre-
ceding the *habendum* of the deed) in these terms : " I also agree
and covenant with said grantees, that I will, or my executors or

administrators shall, pay to said grantees, for the use and benefit of said grantees and the owner of the other undivided fourth part of the property aforesaid, as a firm in carrying on the business of manufacturing at said mills under the firm name of John Mather & Company, the sum of fifteen thousand dollars in bills receivable."

The codicil, after appointing certain trustees of the estate which the testator might leave at his death, contained the following provision relating to the deed : " I having executed a deed of this date from me to my nephew John Mather, his son Thomas Mather, and my nephew Thomas Berry, of three undivided fourth parts of my mill property on River Meadow Brook in said Lowell, the other undivided fourth part of the property described in said deed, and not conveyed thereby, said trustees shall convey to John Berry, brother of Thomas Berry, if he elect to come to this country and join the said John Mather and other grantees in said deed in manufacturing with said mill property under the firm of John Mather & Company ; but should he finally decline so to do, said trustees are to convey said undivided fourth part to said John Mather, Thomas Mather and Thomas Berry, as fully as they own or are to own the other three undivided fourth parts, which they are to own as fully as is in said deed expressed."

Joshua Mather, on the day on which he signed the deed, " delivered it to this defendant for said grantees, the plaintiffs ; " and the defendant " so received it from said Joshua, and kept it till delivered by him to the grantees as hereinafter stated, but he was not employed by said grantees to receive the same for them." The plaintiffs lived in England ; and the defendant " notified them by letters, while they were in England, of said will, codicil and deed, and inclosed in one of them, for their benefit, a copy of said will, codicil and deed, and kept said deed in his possession, from the time it was so delivered to him by said Joshua, until about November 3, 1865," when he delivered it to them, they having meanwhile, in August, come from England to Massachusetts ; and they caused it to be duly recorded the next day.

John Berry, who also lived in England, elected to come to this country, in accordance with the terms of the codicil, "and did come to this country in May 1866, and joined the plaintiffs in manufacturing with the mill property described in the deed, under the firm name of John Mather & Company, the said John Mather, Thomas Mather, Thomas Berry and John Berry constituting said firm; and they commenced and conducted business with said property as such firm soon after said John came." The trustees appointed under the codicil accepted the trust, and during the winter of 1866–1867 conveyed to John Berry the remaining undivided fourth part of the mill property mentioned in the codicil.

On September 27, 1867, the plaintiffs made demand on the defendant, as executor of Joshua Mather's will, for payment to them of fifteen thousand dollars in conformity with the covenant quoted from the deed; and the defendant did not comply with the demand.

"If material and competent to be proved, there was no consideration paid or made by the grantees to Joshua Mather for his deed and covenant; unless the facts that, upon receiving his letter [on June 10, 1865], they closed up their business in England, sold out some of their property there, and after the death of the testator, and after the receipt of the notification aforesaid from the defendant, completed their preparations in England, came to this country, and with John Berry entered into business as aforesaid, amount to a consideration; and unless the facts herein admitted amount to a consideration; and unless the facts that said grantees and Berry were kindred of said Joshua, and the love and affection he bore them, amount to a consideration, said John Mather, Thomas Berry and John Berry being his nephews, and Thomas Mather being son of said John Mather."

*E. A. Alger,* (*A. R. Brown* with him,) for the plaintiffs.

*D. S. Richardson,* for the defendant.

MORTON, J.   The facts of this case show conclusively that it was the intention of Joshua Mather to deliver the deed, upon which the plaintiffs rely, to Mr. Corliss for them, absolutely, and not as an escrow.   He delivered it for said grantees to said

Corliss, who so received it and kept it till delivered by him to the grantees.    This deed took effect, and vested the estate thereby conveyed in the plaintiffs, from the delivery to Corliss. The case of *Foster* v. *Mansfield*, 3 Met. 412, is a conclusive authority upon this point, and renders further discussion of it unnecessary.

There being a valid delivery of the deed, all the covenants in it took effect and became binding upon the grantor.    Among these covenants is the following: " I also agree and covenant with said grantees that I will, or my executors or administrators shall, pay to said grantees, for the use and benefit of said grantees and the owner of the other undivided fourth part of the property aforesaid, as a firm in carrying on the business of manufacturing at said mill under the firm name of John Mather & Company, the sum of fifteen thousand dollars in bills receivable."    The only objection urged to the validity of this covenant is, that it is not supported by a sufficient consideration.

It is not necessary to determine whether the facts agreed show an adequate consideration ; because, the covenant being under seal, the consideration cannot be inquired into.    The elementary principle applies, that a seal implies a consideration, or, in other words, the existence of a consideration is conclusively presumed from the nature of the contract.    *Page* v. *Trufant*, 2 Mass. 159. The plaintiffs are therefore entitled to recover in this action the amount named in the covenant.    As no time for the payment of the amount was fixed in the covenant, the defendant was not in default until demand was made upon him, and therefore the plaintiffs are entitled to interest only from the date of their demand.

Unless the parties agree, the case is to be sent to an assessor to determine the amount for which judgment shall be rendered.

*Judgment for the plaintiffs.*