JOHN B. O'DONNELL, executor, *vs.* CHARLES SMITH & another.

Hampshire. Sept. 22. — Oct. 22, 1886. DEVENS & W. ALLEN, JJ., absent.

A conveyance of land in trust "for the benefit of A. for a homestead for his life, and for B. after the said A.'s decease, his heirs and assigns," gives B. a vested remainder in fee, which he can alienate in A.'s lifetime.

An assignment, under seal, to a town, of a sum of money held in trust for the assignor, purporting to be "in consideration of one dollar and other valuable consideration," and the object of which is expressed to be to repay expenses incurred by the town for the support of the assignor as a pauper, and, if anything is left after paying for past charges, to pay for his support in the future, is valid.

An assignment of a sum of money will not, after the death of the assignor, be held to be invalid, because, nine years before the execution of the assignment, the assignor was placed under guardianship as a spendthrift, if the person appointed guardian did not accept the office, although the decree of the Probate Court appointing him has not been revoked.

BILL IN EQUITY, filed April 29, 1886, by the executor of the will of Thomas O'Keefe, against Charles Smith and the city of Northampton, alleging the following facts:

Thomas O'Keefe, of Northampton, died on June 10, 1884, leaving a will dated June 9, 1881, and by said will disposed of his real and personal estate as follows: After the payment of his just debts and expenses, he gave to Edmund O'Keefe the sum of $100, and the rest and residue of his estate, real and personal, he gave to his father, Michael O'Keefe. On September 30, 1885, the will was duly admitted to probate, and the plaintiff, named in said will as executor, took upon himself the due execution thereof. At the date of said will, and for some years prior thereto, and until the present time, the only estate to which the will could apply consisted of an equitable reversion in and to a certain fund of about $350, held in trust by the defendant Smith for Thomas O'Keefe, his heirs and assigns, the fund being the proceeds of the sale of a certain homestead conveyed by deed by one Ansel Wright and another to one Patrick Maloney, "in trust and for the benefit of the said Michael O'Keefe for a homestead for his life, and for the said Thomas O'Keefe, after the said Michael's decease, his heirs and assigns." Said Maloney having deceased, the defendant Smith was duly appointed by the Probate Court in his stead, and has ever since held and invested the fund upon said trust, and paid the income thereof to Michael O'Keefe until his death, in July, 1885.

The defendant Smith has been requested by the plaintiff to pay over the fund to him as executor, as well for the benefit of the estate of Thomas O'Keefe as for the benefit of Edmund O'Keefe, as legatee under the will of said Thomas, and for his further benefit and interest as a creditor of Michael O'Keefe, the residuary legatee of said estate. The fund is sufficient for the payment of the legacies under the will.

The defendant Smith has refused, unless by direction of this court, to pay the fund, as requested, or any part thereof, alleging as a reason therefor that a like demand has been made upon him by the city of Northampton to pay over the fund to said city, and that the city claimed title thereto under and by virtue of a pretended assignment, dated January 11, 1882, made to the town of Northampton, before the incorporation thereof as a city,

whereby said Michael and Thomas O'Keefe assigned and trans-ferred all their right, title, and interest in and to said fund, the same to be applied by the overseers of the town in pay-ment of expenses and charges already incurred, and to be there-after incurred, for their care and support as paupers; and that the defendant Smith is unwilling to comply with the demand of the city unless he has the direction of this court.

The bill further alleged that the assignment was of no force or validity at law or in equity; first, for want of capacity in the assignors, or either of them, to vary or defeat the terms of said trust; secondly, for want of capacity or authority in the town, as assignee, to take, accept, or hold any fund assigned for the spe-cific purpose mentioned in the assignment; thirdly, for want of consideration for the same; fourthly, because the assignment was not a contract within the scope of the powers conferred by the statute upon towns, or necessary or convenient for the due exer-cise thereof.

The prayer of the bill was, that it be decreed that the fund in the hands of the defendant Smith is held by him upon said trusts, and that an account be taken of the amount thereof; that the assignment be held to be of no effect and void; that the defendant Smith pay and transfer to the plaintiff, for the benefit of the estate of Thomas O'Keefe, and of Edmund and Michael O'Keefe as legatees thereof, all of said fund; and for other and further relief.

Annexed to the answer of the city of Northampton was a copy of the assignment referred to in the bill, which was under seal, and the material parts of which were as follows:

" Whereas, by a certain deed, dated July 18th, A. D. 1864, made by Ansel Wright and others to Patrick Maloney, a trust was created as therein set forth for the benefit of Michael O'Keefe and Thomas O'Keefe, both of Northampton;

" And whereas, said Patrick Maloney having deceased, Charles Smith of said Northampton was appointed, by the Probate Court for the county of Hampshire, trustee in the place of said Patrick Maloney, deceased;

" And whereas, said Charles Smith, trustee, has in accordance with a license of said court sold said property described in said deed of trust, and has invested and deposited the proceeds of

said sale in the Northampton Institution for Savings, and the amount of said deposit remaining in said bank is the sum of three hundred and fifty-nine dollars;

" And whereas, said Michael O'Keefe and Thomas O'Keefe, beneficiaries under said trust, have become and are a charge upon the town of Northampton, and are liable to continue a charge upon said town of Northampton in the future:

" Now therefore, in consideration of one dollar and other valuable consideration to us, Michael O'Keefe and Thomas O'Keefe, paid by said town of Northampton, we do hereby transfer, assign, and set over to said town of Northampton all our right, title, and interest in and to said deposit in said savings bank, and hereby authorize and empower said Charles Smith, trustee, to transfer, assign, set over, and pay to said town of Northampton said sum of three hundred and fifty-nine dollars remaining in said bank, to be applied, by the overseers of the poor of said town of Northampton, in payment of expenses and charges already incurred by said town for our care and support, and to be applied so far as said sum will go, if any remains after paying for past expenses and charges, for our support in the future."

The case was heard by *Field*, J., and reported for the consideration of the full court, in substance as follows:

Michael O'Keefe died in July, 1885. Thomas O'Keefe died in June, 1884, leaving a will, which has been admitted to probate, and of which the plaintiff is executor.

The substance of the will is set out in the bill. Charles Smith, one of the defendants, holds in his hands $339.30, which, deducting his costs, he is willing to pay over to the persons entitled to it. The money is the proceeds of real estate conveyed upon trust, as expressed in the will, namely, "in trust and for the benefit of the said Michael O'Keefe for a homestead for his life, and for the said Thomas O'Keefe after the said Michael's decease, his heirs and assigns." Both Thomas and Michael O'Keefe had legal settlements in Northampton, and were there supported as paupers, and the sums expended by Northampton for them are as follows: $357.30 for Thomas, and $770.70 for Michael.

The judge found, as facts, that, on January 11, 1882, both Michael O'Keefe and Thomas O'Keefe executed the assignment

annexed to the answer of the city of Northampton; that it was delivered to Luke Lyman, chairman of the selectmen of Northampton, who were at that time overseers of the poor for the town of Northampton; that the assignment was executed at Lyman's request; that he was empowered to take it by the board of selectmen and overseers of the poor, who informally authorized him to procure and receive such an assignment; but no action was taken by the inhabitants of the town in reference to it, either before or after it was taken, and it did not appear that the taking of it was ever reported to or known to the inhabitants of the town; and that the assignment was found in the registry of probate, which was the place used for the meetings of the selectmen and overseers of the poor at this time, being the office of Lyman, the chairman, who then was register of probate.

It appeared also, that on January 22, 1873, the selectmen of the town of Northampton petitioned the judge of probate that a guardian might be appointed of the person and estate of Thomas O'Keefe, on the ground that, by excessive drinking, he was wasting his estate, and exposed the town of Northampton to charge and expense for his support; that a citation was duly issued and served on him; that he appeared, and a hearing was had, and on February 8, 1873, a decree was entered, appointing such guardian; and that Lewis B. Edwards, the person appointed guardian, never accepted the appointment, or gave bond, or received letters of guardianship, or entered upon the performance of his trust; but the decree has never been revoked or reversed.

Upon these facts, the case was reserved for the determination of the full court upon the question whether the whole or a part of the money should be paid to the city of Northampton by Charles Smith, or whether it should, in whole or in part, be paid to the plaintiff; such decree to be entered as law and justice might require.

*C. G. Delano*, for the plaintiff.

*T. G. Spaulding*, for the city of Northampton.

HOLMES, J. The trust " for the benefit of the said Michael O'Keefe for a homestead for his life, and for the said Thomas O'Keefe after the said Michael's decease, his heirs and assigns," gave Thomas O'Keefe a vested remainder in fee, and did not

attempt to hamper his power of alienation. He executed a deed of assignment to the town of Northampton, purporting to be "in consideration of one dollar and other valuable consideration." It does not appear that the consideration was not received as stated, and it is presumed that consideration was received in the absence of evidence to the contrary, *Boynton* v. *Rees*, 8 Pick. 329, if such evidence would be admissible in favor of persons having no better standing than the grantor. *Blodgett* v. *Hildreth*, 103 Mass. 484, 487. *Mather* v. *Corliss*, 103 Mass. 568. The deed further purported to be a present conveyance of an interest which could be presently conveyed, and which was conveyed therefore, even if the deed was without consideration, there having been no fraud or duress, unless some illegality is disclosed by the transaction.

The deed shows that its object was to repay expenses incurred by the town for the support of the grantor as a pauper, and, if anything was left after paying for past charges, to pay for his support in the future. We assume that the grantor was not bound to pay for either, and that the selectmen could not bind the town to support him in the future. Still, it was lawful for him to repay the town, if so disposed, and the deed was valid so far as it looked to that end. *Stow* v. *Sawyer*, 3 Allen, 515, 517. It was equally lawful for him to put funds into the hands of the selectmen for his future support. *Sutton Parish* v. *Cole*, 3 Pick. 232, 238. *Groveland* v. *Medford*, 1 Allen, 23, 24. *Webb* v. *Neal*, 5 Allen, 575. And even if he could have avoided the conveyance, to that extent, the next day, still when the funds or their equivalent had been applied it would have been too late, and in fact he never attempted to avoid it. The selectmen and overseers of the poor, however limited their authority to impose burdens on the town, could accept a gift of funds for its benefit. *Worcester* v. *Eaton*, 13 Mass. 371, 379.

It is suggested that the grantor was incapacitated from executing this deed in 1882, by a decree passed in 1873, nine years before, appointing a guardian for him as a spendthrift, although the person appointed never qualified or entered upon his duties. Putting the case in the most favorable way for the plaintiff, the question is whether a guardian had been appointed, within the meaning of the Pub. Sts. *c.* 139, § 9, which makes such

appointment a condition to its avoidance of transfers made by the spendthrift.

There is no incapacity of spendthrifts at common law. *Manson* v. *Felton*, 13 Pick. 206, 210. *Smith* v. *Spooner*, 3 Pick. 229. 1 Bl. Com. 305, 306. Nor does the statute so far liken them to insane persons as to create an incapacity, apart from guardianship. The validity of a debt or gift would not be affected by an admission of record that, at the time of contracting the one or making the other, the contractor or donor was a spendthrift, and ought to have been under guardianship.

This being so, it seems to us extravagant to suppose that a decree, which can only operate to declare that the party is a spendthrift and ought to be under guardianship, should indefinitely suspend the power of dealing with his own property, which a person of that sort has by the general principles of law apart from the decree. The immediate ground on which the power is withdrawn from him would not seem to be his condition, but that the power is effectively transferred to somebody else, although his condition is the reason for which the transfer is made.

We assume that, while it was open to the person nominated as guardian to accept the appointment, if the spendthrift had made a transfer, its effect would have been in suspense, and would have been avoided by an acceptance of the guardianship. But when acceptance becomes impossible, as it has by the death of the spendthrift, it becomes impossible that the decree should ever be operative according to its purport and intent, and we think that it should not be allowed a partial operation of a kind never contemplated by the statute. When we add to the foregoing considerations the fact that at the date of the deed nine years had elapsed since the decree, we are of opinion that the person appointed must be taken to have declined the appointment before the deed was made, and thus, for an additional reason, that it cannot be said that a guardian was appointed at that time, even if it would have been in the power of the Probate Court to appoint a new person under the old proceedings after notice, *Allis* v. *Morton*, 4 Gray, 63, and a new petition would not have been necessary ; a proposition which is not entirely clear, in view of the possible change of habits in the interval.

*Decree for the claimant.*