ISABEL TYRELL ET AL., Plaintiffs and Appellants, *v.* RAFAEL SAURÍ, Defendant and Appellee.

No. 10128. Argued May 1, 1950.—Decided May 26, 1950.

*Carlos E. Colón* for appellants.

MR. JUSTICE TODD JR., delivered the opinion of the Court.

Does the district court lack jurisdicion over the person of the defendant in an action for the declaration of prodigality wherein defendant's default was entered and he was not represented by a guardian appointed under Rules 17 (*f*) and (*g*) of Civil Procedure at the trial for default? This is the sole question for decision in the present case. The facts are as follows:

Isabel Tyrell, as wife, and Isabel Saurí, as daughter of Rafael Saurí, filed a complaint against the latter seeking that he be declared a habitual spendthrift for the proper legal purposes, and specifically declaring the defendant incapable to sell, assign, convey, encumber, transfer, or exchange his real or personal property within or outside of Puerto Rico, and to contract obligations of any kind, seeking also that plaintiff, his daughter Isabel Saurí, be appointed as defendant's tutor, inasmuch as the wife, coplaintiff herein, could not take care of the administration of defendant's property because of her ill health. It was alleged in the complaint that the plaintiffs are wife and legitimate daughter, the latter as defendant's sole forced heir, in which capacity they file this action under § 187 *et seq* of the Civil Code, 1930

ed.[1]; that the defendant owns real and personal property within the Judicial District of Ponce; that due to his age and character he has been recently and habitually carrying out acts of prodigality with respect to third persons who are not his relatives, making gratuitous gifts of considerable sums of money and other acts of prodigality, capriciously wasting his estate, to the prejudice of the plaintiffs; that the latter reasonably fear that defendant might continue such acts of prodigality for which reason they ask that he be declared a spendthrift by a final and unappealable judgment, and accordingly be submitted to tutelage.

The defendant was summoned and having failed to answer the complaint within the statutory term, the plaintiffs prayed that default be entered against him, which the clerk of the lower court did. At the hearing on default, and without the appearance of defendant either personally or through counsel, the plaintiffs introduced oral and documentary evidence submitting the case for decision.

In rendering judgment dismissing the complaint, the lower court stated:

"Dr. Ramón Fernández Marina, one of the witnesses, stated, among other things, the following: 'It is clear that Mr. Saurí,

---

[1] These Sections provide:

"Section 187.—A decree of prodigality or habitual drunkenness shall be made by means of an ordinary suit prosecuted in an oral and public trial.

"The judgment shall prescribe the acts which shall be prohibited to the incapacitated person and the powers which the tutor shall exercise in his name. The court shall adopt such provisional measures as may be necessary for the protection of the property until the judgment is rendered.

"Section 188.—Only the husband or wife and the forced heirs of the prodigal or drunkard and, exceptionally, the public attorney (fiscal), either by himself or on petition of some relative of the said husband or wife or forced heirs, when they are minors or incapacitated, may demand the decree referred to in the preceding section.

"Section 189.—The acts of a prodigal or drunkard previous to the petition for interdiction, shall not be contested on account of prodigality. Those executed after the date of the filing of the petition of incapacity of the prodigal or drunkard shall be voidable if they cause grave injury to the interests to be placed under the tutorship provided for him."

because of his history and his allegations before the psychiatrist, is losing his mental power to competently control that part of his personality which refers to those acts or primitive instincts, and this disease shall advance progressively rendering him incapable in the future in other aspects of his personality.'

"He further added:

" 'Do you think that this disease is progressive, doctor? 'Yes.'

" 'Do you think that a person who suffers from this disease would be capable to manage somehow . . . to manage his property properly, doctor. . . ?' 'No. . .'

" 'Would he be capable. . . ? Absolutely, no'."

"Although the physician in his testimony said that Mr. Saurí has been suffering for some years a 'hypomaniac condition' that is, that he has been suffering from a mild mania, such a condition, by itself, does not establish that the defendant is mentally incompetent to manage his person or property, but the physician testified categorically in the statements copied from his testimony, upon being examined by plaintiffs' attorney, that the defendant was wholly incompetent to manage properly his property due to the disease which he suffers.

"Under these circumstances it is manifest that Mr. Saurí should have been assisted in this proceeding, ever since the complaint was filed, by a guardian *ad litem*, pursuant to the provisions of Rule 17, subdivision 'f' and 'g' No. 3 of the Rules of Civil Procedure.

" . . . . . . . . . . . .

"Under such a state of fact and of law, we reach the conclusion that in this suit of prodigality against defendant Rafael Saurí, the court has not acquired jurisdiction over his person since, as the physician testified, he is wholly incompetent to manage his property.

"Having reached the conclusion that we lack jurisdiction because the proper procedural steps were not taken in this suit, we find it unnecessary, although the case was submitted on its merits, to consider or to decide the issue in question."

The plaintiffs appealed and allege that the lower court erred in holding that by reason of the testimony of Dr. Ramón Fernández Marina it was necessary to appoint a guardian *ad litem* for defendant, in declaring itself without juris-

diction on that ground and in flatly dismissing the complaint without the plaintiffs being given an opportunity to procure within the same proceeding the appointment of a guardian *ad litem*.

As to the last assignment of error it would suffice to say that the plaintiffs did not seek the reconsideration of the judgment nor the opportunity to obtain, if proper, the appointment of a guardian for the defendant within the same action.

■■ The other two assignments deal on the same matter which is set forth in the introductory question to this opinion.

Rules 17(*f*) and (*g*)(3) of Civil Procedure cited by the lower court in support of its judgment declaring itself without jurisdiction over the person of the defendant are nothing more than an adaptation of §§ 56 and 57 of the Code of Civil Procedure, which provide:

"Rule 17(*f*) *Infants, Etc., to Appear by Guardian.*—When an infant or an insane or incompetent person is a party, he must appear by his father or mother with *patria potestas*, if living, and in default thereof, by his general guardian, or by a guardian *ad litem* appointed by the court in which the action is pending, or by a judge thereof, in each case. A guardian *ad litem* may be appointed in any case, when it is deemed by the court taking cognizance of the matter, or by a judge thereof, that the infant, insane or incompetent person be represented by such guardian *ad litem*, notwithstanding he may have a general guardian and may have appeared by him.

"(*g*) *Guardian ad Litem, How Appointed.*—When a guardian *ad litem* is appointed he must be appointed as follows:

".  .  .  .  .  .  .  .  .  .

"(3) When an insane or incompetent person is a party to an action or proceeding, upon the application of a relative or friend of such insane or incompetent person, or of any other party to the action or proceeding."

The provisions of Rule 17(*f*) presuppose that the party in suit is an infant or an insane or incompetent person, that

434

is, they apply to an insane or incompetent person who is actually declared insane or incompetent or whose condition as such has been established and is not subject to future adjudication.

In the instant case we are not dealing with an insane or an incompetent person. Precisely, the purpose of the action for the declaration of prodigality is to determine whether defendant has capacity to manage his estate. It does not presuppose, if he has not, a declaration of complete incapacity. Possibly, bearing this in mind, our Legislature in approving the Civil Code of 1902 did not adopt literally §§ 221, 222, and 226 of the Spanish Code equivalent to §§ 187, 188, and 189 of our Code, *supra*, and expressly eliminated § 223 which in Spain provides that:

"If the defendant does not enter an appearance he shall be represented by the prosecuting officer or, if the latter be already a party to the proceedings, by some person appointed by the court to appear for the defendant but without prejudice to the provisions of the law of civil procedure concerning proceedings upon default."

It is also significant that although § 187 of our Code, *supra*, provides that a decree of prodigality should be made in an ordinary suit prosecuted in an oral and public trial, § 221 of the Spanish Civil Code provides that said declaration of prodigality "can only be made in a *litigated* proceeding," and that is why Manresa, commenting on § 223, says:

"The aim of this section, analogous in part to others of Project of 1851, is to secure the benefits of a declaration of prodigality in order to avoid any possible abuse. Section 221 already says with well-meant significance that the declaration should be made in a 'litigated proceeding'; and of course it would not have its full effect if being defendant absent from trial, he should not be represented either by the prosecuting attorney or by a guardian, similarly to that provided by § 215." 2 Manresa, *Comentarios al Código Civil Español,* 6th ed., p. 315

Section 215 to which Manresa refers is equivalent to § 182 of our Code and it provides for the tutorship of insane persons and of the deaf and dumb but whose prior declaration as such is required by § 180 and it is within the proceeding for such declaration that § 182 requires that, on petition of the prosecuting attorney, the court shall appoint a "next friend for the person presumed to be incapable and who *does not wish* or is unable to defend himself." (Italics ours.)

Although § 223 was eliminated from our Code, § 182, equivalent to § 215 of Spain, was included therein as to the condition of appointing a guardian to the person presumed to be incapable (insane, lunatic or deaf and dumb.) Why was § 223 eliminated from our Code? We do not know, but as stated by our learned commentator, recently deceased, Luis Muñoz Morales, in his *Reseña Histórica y Anotaciones al Código Civil de Puerto Rico*, First Book, 1947 ed., pp. 569, 570:

"We do not understand nor has it being explained why this Section was omitted in the revised edition of 1902, when on the other hand our § 182 contained another analogous provision in the preceding section with respect to the declaration of incapacity for insanity, mental derangement or deafmuteness.

"Pursuant to said section of the Spanish Code, although the presumptive prodigal who fails to appear shall be adjudged in default, he shall always have representation at trial. (See Sánchez Román, Book 5, vol. 2, p. 1347, C. de Diego, vol. 2, p. 614).

"Having eliminated this section, the applicable law is, that when the defendant fails to appear, judgment by default is entered as provided by subdivision 2 of § 194 of our Code of Civil Procedure (1933 ed.), the whole evidence being introduced in the absence of and without representation for defendant."

We have already said that possibly the omission of § 223 from our Code was due to the fact that the declaration of prodigality does not entail, as in the cases provided by § 182, a decree of complete incapacity. This is recognized by several decisions of the Supreme Court of Spain and especially by that of March 25, 1942, in which Magistrate José Castán was the writer and which is exhaustively com-

mented in 26 *Revista de Derecho Privado* 337-342. Because in our opinion, this decision contains a clear and accurate exposition of the meaning of prodigality, we copy at length from a summary made thereof in 14 *Repertorio de Jurisprudencia Civil* 372, as follows:

"Neither the tradition which stems from the Roman law and which is summarized in the Partidas, and much less the provisions of the Civil Code with reference to prodigality *in no way admit that it represents a distraction of the mental powers, since it assumes to be a disturbance or disorder which solely affects the economic order* and it is repressed in consideration of the prejudice it might cause the family of the prodigal; and this basic idea runs through the different notes which harmonize the system of prodigality in our law and becomes manifest in §§ 222, 224, 225 and 221, subdivision 2 of the Civil Code, and in the decision of February 16, 1904; for which reason it is an erroneous doctrine that which requires the petitioner to show that the alleged spendthrift squanders part of his estate for mere complacency, or in such arbitrary, capricious and absurd manner, incurring extravagant, stupid and inexplicable expenses to the point of making explanation and prodigality antagonistic terms.

"The concept of prodigality should be broad, although congruent with the general and grammatical sense of the word as used in the decisions of February 17, 1904, June 19, 1915 and September 30, 1930 and consistent with the exigencies of a finalist interpretation being mindful of the grounds or reasons of the juridical institution in question; in view of all this, it should be applied to any person of disorderly conduct who habitually squanders or seriously wastes his estate either because of his tendency to useless or extravagant expenses, out of proportion with his economic-social standing or because he manages his estate carelessly and loosely, unreasonably jeopardizing his estate to the prejudice of his next of kin, spouse, descendants or ascendants.

"The enlarged concept that should be given to the term prodigality admits and advises the inclusion therein of a whole series of *economic disorders* and all the modes or types of dissipation, provided the circumstances which create the notion of prodigality and mark its essential characteristics concur,

namely; (*a*) a disorderly and loose conduct—not merely imprudent—in the management or use of his own patrimony, either due to a disorderly spirit or to disorderly habits; (*b*) that such conduct be habitual, inasmuch as the more or less irregular or excessive acts, but isolated or purely circumstantial, can not be characterized as constituting the legal condition of prodigality; (*c*) if the preservation of the patrimony is unreasonably jeopardized to the prejudice of those persons who have a right of action and are attached to the prodigal by very close family ties and to whom the latter is bound by moral and legal obligations.

"  .   .   .   .   .   .   .   .   .   .   .

"The declaration of prodigality, rather than of a sensationalist nature, is a remedial measure to protect the estate from any danger or ruin and in order to properly gauge such danger and brand a person a spendthrift, his acts ought to be considered as a whole—and not by the frequency or awkwardness of each act, individually, from a social aspect—in order to appreciate which is his state of mind and disposition and the necessity of curbing his tendency to disorder and waste by the preventive measure which the declaration of prodigality implies." (Italics ours.)

To the same effect Clemente de Diego says:

"Rather than a mental disease, prodigality is a vice of the will, a moral weakness or illness which makes us slaves of our own whims and passions. The declaration of prodigality, which should be made in a litigated suit (221, Civil Code) places the spendthrift under tutorship within such limits as the judgment may provide, although by its very nature it is restricted to the economic order, without exercising any influence over the conjugal or paternal authority of the spendthrift and without giving the tutor any power over his person. . ." 1 *Derecho Civil Español* 193.

Thus, De Buen-Bonet, 1 *Derecho Civil Común y Foral* 56, state that "The guardianship of the prodigal falls over property, and *not over the person*. By the same token Sánchez Román has said (*Estudios*, v. II, p. 229) that the incapacity of the prodigal is relative, circumstantial and limited." (First italics ours.)

Lastly, Manresa (*op. cit.*) on p. 317. says:

"The difference between this case and that of an insane or demented person is quite manifest. Although according to the Roman law the prodigal was likened to the insane, it was merely in the legal sense, that is, with respect to its juridical consequences; but, even if it were assumed that the spendthrift is insane or mentally deranged, insofar as the economic order of his life and the use of his estate is concerned, it shall always be concluded that for all his other acts or deeds, such lack of reason does not exist, and therefore, guardianship shall not interfere with them. . . . Accordingly the limitations of a personal character imposed by the Partidas on the adjudicated spendthrift, such as having no capacity to be a witness to a will (Law 9, tit. I, Partida 6), or to execute his own will (13 of the same title and Partida), etc. are repealed."

As to this matter see: 2 *Revista de Derecho Privado* 340; 19 Idem 311; 26 Idem 337; Colin y Capitant, *Derecho Civil*, tit. 2, v. 1 (*Notas sobre el Derecho Civil Español* by Demófilo De Buen), pp. 380-383; 1 Castán, *Derecho Civil Español, Común y Foral* 154.

The same doctrine prevails at common law. In the opinion rendered in *O'Donnell* v. *Smith*, 8 N. E. 350, 352 (Mass. 1886), in which Mr. Justice Holmes was the writer, it was said: "There is no incapacity of spendthrifts at common law. (Authorities) Nor does the statute so far liken them to insane person as to create an incapacity, apart from guardianship. (Authorities). . . ." See also *Taylor* v. *Koenigstein*, 260 N.W. 544, 546 (Neb., 1935), wherein an excerpt is copied from the case of *Manson* v. *Felton*, 13 Pick. (Mass.) 206 as follows:

"Lunacy or distraction, independent of any positive enactment, is itself a disability to contract, arising from want of capacity. In the case of a spendthrift there is no natural or mental incapacity, and therefore, the incapacity by force of the statute itself, takes effect only from the appointment of the guardian, except the precise limited incapacity to make conveyances of property after a complaint filed and before any pro-

ceedings upon it, declared by St. 1818, c. 60.[2]   Now the invalidity of all grants and transfers of property by a lunatic and idiot, does not arise from the appointment. of a guardian . . . but from the natural incapacity, arising from want of mental power to contract; and this, not by force of the statute, but by well-known rules of the common law".[3]

■ In addition, we have decided that the appointment of a guardian *ad litem* is a procedural and not a jurisdictional question.   *Trueba* v. *Martínez*, 33 P.R.R. 446, 461; and the demand for payment made in a mortgage foreclosure proceeding to an insane person who has never been · declared incapacitated by the court, "is valid and sufficient to vest the court with jurisdiction, and consequently it did not void the foreclosure proceeding."   *Fuentes* v. *Federal Land Bank,* 64 P.R.R. 193, 206.   The prevailing rule in the United States is that a judgment rendered against a minor or an incapacitated person for whom a guardian or tutor has not been appointed is not void, but erroneous.   27 Am. Jur. 842, § 121; 28 Am. Jur. 744, § 144.   See also the cases cited on page 191 of our opinion in the case of *Subirana* v. *Cortada*, 38 P.R.R. 183.

According to the testimony of Dr. Fernández Marina, the defendant has been for some years suffering from a hypomaniac condition whose characteristic is that the person gradually loses the capacity to control his primitive impulses specially in the sexual aspect, which compel him to act without inhibitions of any kind and unmindful of the means to attain his wishes; that the defendant is losing his understanding to properly control that part of his personality which refers to primitive acts or instincts and that this disease will gradually increase rendering him incapable *in the*

[2] The provision of this statute is similar to that contained in § 189, *supra*, of our Civil Code.

[3] Likewise §·1215 of the Civil Code provides that among others, "lunatics or the insane and the deaf and dumb who do not know how to write," can not give· consent to contracts.   Prodigals are not included among the incapacitated persons to give valid consent.

*future* in other aspects of his personality. Accordingly he testified that the defendant was wholly incompetent to properly manage his estate. Although the lower court admitted in its judgment that the condition of the defendant by itself "does not establish that . . . he is mentally incompetent to manage his person or property", it thereafter concluded that the testimony of the expert physician was sufficient to show that the defendant was actually incapacitated to properly manage his estate. Such weighing of the evidence is contradictory for in one place the lower court states that the incapacity was not established and in another it states the opposite, notwithstanding the fact that at the end it says that due to the jurisdictional question involved it did not find it necessary to pass on the merits of the case.

We have no desire to express an opinion as to whether the evidence in this case is sufficient to declare the defendant a spendthrift. That is the mission of the lower court at first instance. We confine ourselves to deciding that since this is not an action to declare the defendant a lunatic or insane, the appointment of a guardian *ad litem* was not necessary under Rule 17 (*f*), *supra*, and, consequently, the lower court erred in declaring itself without jurisdiction.

Judgment will be reversed and the case remanded for further proceedings.

Mr. Justice Snyder did not participate herein.