ARTHUR LEONARD WARD *vs.* ARTHUR LEONARD WARD, JR.

No. 06-P-1254.

Middlesex. March 21, 2007. - October 3, 2007.

Present: KANTROWITZ, TRAINOR, & GRAINGER, JJ.

*Deed,* Rescission, Quitclaim. *Mistake.*

A Superior Court judge erred in allowing rescission of a quitclaim deed, duly recorded, with the reservation of a life estate, based solely on the grantor's unilateral mistake as to the legal consequences of the deed. [368-372]

CIVIL ACTION commenced in the Superior Court Department on February 18, 2003.

The case was tried before *Kenneth J. Fishman*, J.

*Edward FitzGerald* for the defendant.

*Mark S. Furman (Melissa A. Potvin* with him) for the plaintiff.

TRAINOR, J. In this appeal we are asked to determine whether a conveyance of property by quitclaim deed, duly recorded, with the reservation of a life estate, can be rescinded based solely on a unilateral mistake by the grantor.

The plaintiff, Arthur Leonard Ward (Arthur, Sr.), commenced an action in the Superior Court against his son, the defendant, Arthur Leonard Ward, Jr. (Arthur, Jr.), seeking rescission (count I) and reformation (count II) of the deed to 24-26 Cross Street, Belmont (property),[1] due to mistake; a declaratory judgment regarding ownership of the property (count IV); damages for breach of fiduciary duty (count V); relief due to undue influence (count VI); the imposition of a constructive trust (count VII); and an accounting (count VIII).[2] At the request of the par-

---

[1]Count III sought reformation of the deed based on a theory of frustration of purpose. Arthur, Sr., did not pursue this theory of recovery at trial.

[2]Arthur, Jr., also brought a third-party complaint against his sisters, Ruth Ann Ward and Janie Ward. Arthur, Jr., dismissed his claim against Ruth Ann,

ties, the issues of undue influence, breach of fiduciary duty, and mistake were tried to a jury. The judge reserved the requests for a declaratory judgment, an accounting, and the imposition of a constructive trust, and the determination of equitable remedies to be imposed in the event that the jury found undue influence, breach of fiduciary duty, or mistake.

The jury found, inter alia, that (1) Arthur, Jr., did not unduly influence Arthur, Sr.; (2) a fiduciary duty existed between Arthur, Jr., and Arthur, Sr.; (3) Arthur, Jr., did not breach his fiduciary duty; and (4) Arthur, Sr., signed the deed to the property under the mistaken belief that he could change it. The judge adopted each of the jury's findings. Based upon the jury's finding of mistake, the judge rescinded the deed to the property (count I), dismissed the requests for reformation (counts II & III), and declared Arthur, Sr., the owner of the property (count IV).

Arthur, Jr., appeals from the part of the judgment that rescinds the deed, declares the deed null and void, and further declares that the property is held in fee simple absolute by Arthur, Sr.

*Facts.* In February, 2000, Arthur, Sr., retained an attorney, Dale Tamburro, for assistance with his estate planning. Tamburro testified at trial that he explained to Arthur, Sr., the "pros and cons" of conveying ownership of the property while retaining a life estate, including the fact that such a conveyance would be irrevocable. On February 18, 2000, in Tamburro's office, Arthur, Sr., executed a will, power of attorney, health care proxy, and living will. Although the power of attorney named Arthur, Jr., the "attorney in fact," he was not present on the day of its execution and never signed it.

Three days later, Arthur, Sr., executed a quitclaim deed conveying the property to Arthur, Jr., while retaining a life estate for himself. The deed was recorded with the Middlesex South registry of deeds. Arthur, Jr., did not become aware of this conveyance until sixteen months after the deed was recorded. Tamburro testified at trial that Arthur, Sr., executed the deed as his free act and deed, and specifically remembered that Arthur, Sr., wanted Arthur, Jr., "to have the house." Since acquiring the property in December, 1983, Arthur, Sr., had lived in the upstairs unit while Arthur, Jr., lived in the downstairs unit of the property.

and the trial judge directed a verdict in favor of Janie.

In August, 2002, after Arthur, Sr.'s two daughters learned of the conveyance of the property and the will, Arthur, Sr., asked Arthur, Jr., to deed the property back to him. When Arthur, Jr., refused, Arthur, Sr., initiated eviction proceedings resulting in Arthur, Jr., vacating the property pursuant to an agreement for judgment.

The daughters met with a second attorney, who later represented Arthur, Sr., at trial. Claiming that he learned of his mistake about the legal consequences of the conveyance after talking with "someone," whom he could not remember, Arthur, Sr., executed a new estate plan with the help of the second attorney. The new estate plan included a new will, health care proxy, living will, and power of attorney. The new will bequeaths Arthur, Sr.'s entire estate to his two daughters, specifically omitting Arthur, Jr.

*Discussion.* The judge instructed the jury on the doctrine of unilateral mistake, and asked them to determine the following factual questions: (1) did Arthur, Sr., voluntarily sign the deed to the property or was it the result of undue influence; (2) was a mistake made in the deed, either by Arthur, Sr., or the draftsman, and was that mistake clearly inconsistent with Arthur, Sr.'s intent; and (3) was Arthur, Sr.'s actual intent that he be able to change the deed "if he so desired." The jury returned a verdict finding that Arthur, Sr., signed the deed voluntarily and not as a result of any undue influence. The jury also found that Arthur, Sr., "sign[ed] the deed to [the property] on February 21, 2000, under a mistake as to whether he could change the deed." Pursuant to the jury's verdict, the judge determined that the mistake would best be remedied by rescinding the deed and declaring Arthur, Sr., the owner of the property, in fee simple absolute. This was error.

The judge relied on *Simches* v. *Simches*, 423 Mass. 683 (1996), which stated that "a written instrument, including a trust, will be reformed on the grounds of mistake upon 'full, clear, and decisive proof' of the mistake." *Id.* at 687, quoting from *Berman* v. *Sandler*, 379 Mass. 506, 509 (1980). *Simches, supra,* and the other cases relied upon by the judge, however, concern the reformation of a trust stemming from the unilateral mistake of the settlor.

Rather than a trust, the document at issue here is a deed. The

conditions necessary to reform a deed are quite different from those necessary to reform a trust. "The doctrine of reformation for mistake with regard to trusts differs from that with respect to instruments such as contracts . . . in one important respect. In contract law, reformation will not be granted unless the parties' mistake is mutual." *Berman*, 379 Mass. at 509-510.[3] Mutuality of mistake[4] is generally not required to reform a trust, because the settlor usually receives no consideration for the creation of the trust. Unlike trusts, contracts and deeds may only be rescinded or reformed because of mistake if the mistake is mutual to the parties. See *Crowley* v. *Holdsworth*, 264 Mass. 303, 307-308 (1928).[5] See also *Cummings's Case*, 52 Mass. App. Ct. 444, 447 n.8 (2001) ("Rescission is an equitable re-

---

[3]Even when dealing with a trust, however, the mistake must be fully, clearly, and decisively proved, see *Coolidge* v. *Loring*, 235 Mass. 220, 224 (1920), because "[t]he law of Massachusetts is plain that a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms." *Bongaards* v. *Millen*, 440 Mass. 10, 15 (2003), quoting from *Phelps* v. *State St. Trust Co.*, 330 Mass. 511, 512 (1953).

[4]"The phrase, 'a mutual mistake,' as used in equity, means a mistake common to all the parties to a written contract or instrument, and it usually relates to a mistake concerning the contents or the legal effect of the contract or instrument." *Page* v. *Higgins*, 150 Mass. 27, 30-31 (1889).

[5]"As a general rule, reformation of [a deed] may be warranted not only by fraud or by mutual mistake, but also by a mistake of one party . . . which is known to the other party . . . . See *Mates* v. *Penn. Mutual Life Ins. Co.*, 316 Mass. 303, 306 (1944); *Wareham Sav. Bank* v. *Partridge*, 317 Mass. 83, 84 (1944). Under the rule stated in Restatement (Second) of Contracts § 161(c) (1981), reformation is justified if the party knowing of the mistake fails to make it known to the mistaken party; but the result is based on analogy to misrepresentation by silence, an analogy not apt here . . . . It has been said more generally that '[i]f one of the parties mistakenly believes that the writing is a correct integration of that to which he had expressed his assent and the other party knows that it is not, reformation may be decreed.' Corbin, Contracts § 614, at 730 (1960), citing, inter alia, *Moors* v. *Bigelow*, 158 Mass. 60 (1893)." *Torrao* v. *Cox*, 26 Mass. App. Ct. 247, 250, 251 (1988) (footnotes omitted).

In addition, contracts and deeds may otherwise be rescinded or reformed where there has been fraud by one party to the transaction, *Lang* v. *Giraudo*, 311 Mass. 132, 138 (1942), a false statement of a material fact, *Enterprises, Inc.* v. *Cardinale*, 331 Mass. 244, 245-246 (1954), a scrivener's error, *Lyon* v. *Parkinson*, 330 Mass. 374, 378 (1953); *Torrao* v. *Cox*, 26 Mass. App. Ct. at 250, or counsel's negligence. See *Sullivan* v. *Sullivan*, 266 Mass. 228, 229-230 (1929).

medy granted when there has been a mutual mistake of fact or fraud between the parties").

Additionally, relief will not ordinarily be granted, in the absence of fraud or undue influence, merely on the ground of mistake of law. A "[m]isconception of the legal effect of the language used in the instrument is not a 'mistake of law' against which our courts afford a remedy. The parties are bound by the legal effect of what has really been agreed on, and cannot have the declaration set aside on the ground that they did not fully understand the legal effect of the language used, and that certain legal consequences which were not anticipated by the settlors flowed from its execution." *Coolidge* v. *Loring*, 235 Mass. 220, 224 (1920). See *Taylor* v. *Buttrick*, 165 Mass. 547, 549-551 (1896) (court declined to rescind deed, as part of trust, based on unilateral mistake of law or lack of understanding full effect of deed).[6] Were the law to hold otherwise, the reformation or rescission of a contract based solely upon proof of one party's mistake as to its legal effect would impose upon the other party a contract for which he had not bargained. See *Page* v. *Higgins*, 150 Mass. at 30 ("if a deed should be reformed and corrected upon proof of the mistake of one of the parties, the great injustice might be done of imposing upon the other the consequences of a contract to which he had never assented, and therefore wholly against his will").[7] See *Sztuba* v. *Sztuba*, 3 Mass. App. Ct. 781, 781 (1975) (reformation of deed was not warranted

---

[6]A mistake of law, as is a mistake of fact, is reformable in equity when based on the "mutual mistake" of the parties to the instrument. *Mickelson* v. *Barnet*, 390 Mass. 786, 791 (1984) ("Such a mistake is reformable").

[7]In addition to the potential injustice to the other party to the contract, where deeds are concerned, we must also consider the purpose and significance of our recording system.

In 1640, the Massachusetts Bay Colony enacted a recording act for the declared purpose that "every man may know what estate or interest, other men may have in any houses, lands, or other hereditament they are to deal in." Ancient Charters 86 (1814). "The purpose of the recording statute . . . is to show the condition of the title to a parcel of land and to protect purchasers from conveyances that are not recorded and of which they have no notice. . . . One is entitled to rely upon the record . . . . He may deal with the title to the land as he finds it upon the record." *Lamson & Co.* v. *Abrams*, 305 Mass. 238, 244 (1940).

Allowing recission or reformation of a deed based on a unilateral mistake as to its legal consequences would frustrate the purpose of finality in our re-

where mother's failure to include name of plaintiff son as cograntee was unilateral mistake).

It makes no difference that Arthur, Jr., was unaware of the existence of the deed for sixteen months after its recording. The deed acknowledged that Arthur, Sr., conveyed the property "for consideration paid and in full consideration of less than one hundred ($100.00) dollars." Lack of consideration, failure of consideration, or insufficient consideration is not fatal, in the absence of fraud, to a deed's effective transfer of title. See *Mather* v. *Corliss*, 103 Mass. 568, 571 (1870); *Comstock* v. *Son*, 154 Mass. 389-390 (1891) ("A deed is not void as between the parties if without consideration"). Sufficient consideration may also, in the absence of fraud, consist of nothing more than "love and affection"; although it is not a "valuable" consideration, it is nevertheless good consideration between the parties. See *Parsons* v. *Parsons*, 230 Mass. 544, 551 (1918) (consideration paid by son for his mother's conveyance need not be adequate in monetary value because other consideration, such as natural love and affection, constitute sufficient consideration). See also G. L. c. 183, § 6 (failure to comply with requirement of reciting in deed the amount of full consideration, or nature of other consideration, will not affect its validity).[8]

Finally, a written agreement for the sale of real estate, recit-

cording system. It would be inconsistent with the purpose of providing record notice if we allowed Arthur, Sr., to rescind this deed, which was executed to meet his goals and intentions, based on nothing more than his having changed his mind, even if he believed he could do so.

[8]The absence of consideration, however, may result in the gift of a deed. The gift is completed when donative intent is expressed by recording the deed coupled with acceptance by the donee. Once the donee has acknowledged the gift, his acceptance can be presumed. The donee's silence is acceptance. See Restatement (Third) of Property (Wills & Other Donative Transfers) § 6.1 (2003).

Here, title was successfully transferred regardless whether the transfer was based upon the execution and recording of the deed with sufficient consideration, the absence of consideration but under seal, or the completion of a gift. In any event, the issue of inadequate consideration was not argued below and is not before this court.

In addition, the manual delivery of the deed is not necessary to effectuate a transfer of title when the grantor has indicated his intention to deliver by executing and recording the deed. See *Harrison* v. *Trustees of Phillips Academy*, 12 Mass. 456, 460 (1815); *Creeden* v. *Mahoney*, 193 Mass. 402, 404-405 (1907).

372          `70 Mass. App. Ct. 366 (2007)

Ward *v.* Ward.

ing that it is under seal, as the deed here does, is a "sealed instrument," and no consideration is required to support the agreement and to transfer title. See *Tupper* v. *Hancock*, 319 Mass. 105, 107 (1946); *Morad* v. *Silva*, 331 Mass. 94, 98 (1954); G. L. c. 4, § 9A.

Furthermore, the jury determined that Arthur, Jr., neither exercised any undue influence in the procurement of the deed nor breached any fiduciary duty owed Arthur, Sr. The sole issue for this court to consider is the consequence of Arthur, Sr.'s mistake as to the legal consequence of the deed, which conveyed title to Arthur, Jr., and reserved a life estate to himself. The mistake here, if any, was entirely one of law. Arthur, Sr.'s attorney drafted the deed, and there was no showing that the attorney made a scrivener's error. The most that can be concluded is that Arthur, Sr., made an erroneous conclusion as to the legal consequence of precisely what he directed his attorney to draft.

We conclude, therefore, that Arthur, Sr., cannot rescind this deed based upon his unilateral mistaken belief as to its legal effect and consequence.[9]

The judgment of the Superior Court is reversed with respect to count I (rescission) and count IV (declaratory judgment). In all other respects, the judgment is affirmed.

*So ordered.*

---

[9]It is not necessary for us to consider Arthur, Jr.'s additional argument that there was not clear and convincing proof of Arthur, Sr.'s mistake.