Kaplan, Mitchell H., J.
This action was tried to the court, jury waived, on October 14 and 15, 2009. The record remained open thereafter at the plaintiffs request that she be permitted to take the deposition of a non-party witness, Alan Mason, who was then incarcerated in a federal prison, and introduce the transcript. The transcript of that deposition has been filed with the court, received in evidence, and the record closed. In consideration of the testimony, both live and by deposition transcript, exhibits admitted into evidence, and the pretrial and post-trial submissions of counsel, the court makes the following findings of fact, rulings of law and orders that final judgment enter as stated herein.
INTRODUCTION
The plaintiff, Rosa J. Hultberg (Rosa)[2] filed this action seeking reformation of a deed which, by its terms, transferred title to a residential property located at 284 Biyn Mawr Ave., Auburn, Massachusetts (the Property) from Rosa to Rosa and her then husband, Clement M. Hultberg (Clement), as tenants in common. Rosa alleges that the deed was prepared in error, as it had been her and Clement’s intention that they hold the Property either as joint tenants or tenants by the entirety, each with rights of survivorship, and asks the court to reform the deed to reflect this form of joint ownership. Clement died intestate in 2004. Rosa names as defendants Clement’s four adult children by a prior marriage (Susan, Kathleen, David, and Karen), who are Clement’s heirs at law and therefore might have an inherited interest in Clement’s undivided half interest in the Property, if the deed is not reformed. The court uses the word “might” intentionally, because, as will be seen, to say that Rosa and her former husband John Tolman muddied title to the Property would be an understatement.
The court will describe the parties and their relationship to one another and the Property, before addressing in detail the transactions involving title to the Property.
FACTS
At some time prior to 1970, Rosa married John Tolman. They had three sons, of which only Brian plays a specific role in this case. In 1970, Rosa and John purchased the Property, which became their residence. Sometime thereafter, apparently in 1976, they purchased an additional plot of land on Bryn Mawr Avenue adjacent to the Property (the Adjacent Parcel). In 1977, Rosa and John were divorced. Their judgment of divorce ordered John to transfer all of his right, title and interest in the Property to Rosa, but did not mention the Adjacent Parcel. Rosa has been a licensed real estate broker in Massachusetts since 1972, although she testified that she did not actively begin working as an agent until 1977.
Following service as a Marine, Clement obtained a degree in civil engineering and worked as a field engineer for Perini Construction. Clement’s first wife died in 1967, shortly after the birth of their youngest child. Clement moved his family to 9 Garden Street in Auburn. He remarried, but that marriage ended in divorce in 1976. In 1977, Clement’s daughter Susan and Rosa’s son Brian attended the same high school and began dating. As a result, Rosa and Clement met and also began to date. By 1978, Rosa was in some financial difficulty. According to Susan who was then a frequent visitor at Rosa’s house, Rosa did not receive child support from John and was receiving food stamps. Ware Savings Bank had begun foreclosure proceedings on the Property, and three other creditors had liens on the Property.
*326 In late 1978, Clement and his four children moved in with Rosa. In early 1979, Susan, then 17 years old, had a conversation with her father regarding the family situation. Their Garden Street residence was for sale, and Susan was concerned. Her family had just finished a difficult period of merged families with Clement’s second wife, which ended in divorce, and Susan expressed concern about the coming sale of their Garden Street home. Clement told her not to worry: Rosa needed help, but Rosa would add his name to the deed on her home — the Property. While the court credits Susan’s testimony that she had a discussion of this nature with her father, it finds that it was not so specific as to deal with issues of inheritance. Clement was then only 47, and was undoubtedly more concerned for the care and welfare of his children than whether he would leave them an estate. The likely import of his words were to assure Susan that she and her siblings would have a secure place to live. Such assurance does not inform an answer to the question whether two years later a deed was intended to transfer title in the Property to Clement and Rosa as joint tenants with rights of survivorship or as tenants in common. Indeed, there is no evidence that Clement, a field engineer, would have known the difference between these two methods of holding title to a property with another.
In February 1979, the Garden Street residence sold. Clement received a cash distribution of approximately $5600 on the sale of the Property. Also in February, Ware Savings discontinued its foreclosure proceedings on the Property, and Rosa’s finances were apparently put in order. During her testimony, Rosa intimated that Clement contributed only modest resources to the combined families. The court does not find that testimony credible. The court finds that Clement’s resources were combined with Rosa’s and undoubtedly were a significant factor in paying off the arrearage to Ware Savings and bringing financial stability to the families, at least over the next several years of their marriage. While as a field engineer, there were periods during the winter when Clement would be unable to work, it appears that at the time that Clement and Rosa met he was ably supporting four children as a single father, while Rosa’s financial circumstances were strained. Rosa testified that the families’ finances were combined; she and Clement did not keep separate accounts. The court rejects Rosa’s argument that she would not have transferred a separate interest in the Property to Clement in 1981 because he had made no significant contribution to the families’ support. Moreover, as will be discussed, infra, the events of relevance to this case all occurred in 1983 or earlier. Whether years later Clement was less able to make financial contributions to the family is both unclear from the record and not relevant to any issue in this case.
In May 1979, Rosa and Clement married. In July 1979, Susan and Brian married. In November 1979, Susan gave birth to her daughter, Michelle, and the newly wed Rosa and Clement became grandparents. Within three years, Susan and Brian were divorced. Clement and Rosa’s marriage continued until Clement died of pancreatic cancer in 2004.
Rosa, Susan, and Kathleen provided much testimony, sometimes conflicting, concerning the deterioration of the relationship between Rosa and Clement’s children from the early 1980s to the present. Much effort was spent trying to introduce evidence concerning how much time Clement’s son, David, spent with Clement during his last hospital admission. Rosa testified that Clement and David were estranged, while Susan testified that David visited his father each day, avoiding times when Rosa would be there. All of this is, however, entirely irrelevant to the issue presented by this case, in which Rosa asks the court to reform a deed executed in April 1981. Whether the combined families were like the Brady Bunch over the next two decades, or dysfunctional, cannot inform the court’s consideration as to Rosa’s and Clement’s intentions with respect to a 1981 deed.
The court next turns to the tangled, title histoiy of the Property. On June 30, 1970, John Kudron and Lorenz Larson deeded the Property to John and Rosa Tolman, as tenants by the entirety, for consideration of $32,750. Approximately four months later, on November 10, 1970, John transferred his interest in the Property to Rosa for nominal consideration. In a 2006 affidavit filed in this case, Rosa attests: “John Tolman and myself were divorced and as part of the divorce settlement, John Tolman conveyed the property at 284 Biyn Mawr Ave. to me in Novemeber 1970.” That statement is manifestly incorrect as John and Rosa were not divorced until November 1977. The court can only speculate as to the reason for the 1970 conveyance, but, in any event, it appears that Rosa held title to the Properly in fee simple as of November 1970.
The next reference to ownership of the Parcel appears in a July 27, 1976 Declaration of Trust. That instrument established a revocable trust for the benefit of John and Rosa’s three sons (the Trust), named John and Rosa as its trustees, and funded the Trust with the Property. The Declaration of Trust describes the Property with the same metes and bounds as the 1970 deed to John and Rosa, but refers to it as having been conveyed to John and Rosa by one, James Ward, on July 18, 1974. There was no evidence presented at trial that explains how the Property came to be transferred from Rosa to James Ward, and then back to John and Rosa in 1974, if it did. There is also a July 27, 1976 deed from John and Rosa, individually, to John and Rosa, as Trustees of the Trust; and it also refers to the Property as having been transferred to the Tolmans by Ward in 1974. The 1976 deed recites consideration paid to the Tolmans by the Trust of $44,474.83, an amount equal to the aggregate principal amount of two mortgages to which the Properly *327 was then subject, thereby suggesting that the Trust assumed the obligations on the notes that these mortgages secured, although there is no evidence of that.
Shortly thereafter, on October 5, 1976, John and Rosa as Trustees, mortgaged both the Property and the Adjacent Parcel to the Ware Savings Bank to secure a $52,000 note (although the record does not reflect a transfer of the Adjacent Parcel to the Trust). In November 1977, Ware Savings began foreclosure proceedings on the Property. By then the Property was also subject to liens by other creditors. On November 23, 1977, the Worcester Probate Court entered a judgment of divorce nisi dissolving John and Rosa’s marriage. The judgment ordered that John convey his interest in the Property, which was identified by reference to the July 1974 deed, to Rosa. The divorce judgment made no mention of a prior transfer of the Property to the Trust, nor to the Adjacent Parcel.
As noted above, Rosa and Clement were married in May 1979, and, a few months before, Clement had sold his home on Garden Street. The deed to the Property which is the subject of this action is dated April 7, 1981 (the 1981 Deed) and was recorded on May 4, 2001. Rosa offered no testimony, or other evidence, suggesting what it was that prompted her to attempt to transfer title in the Property from her to her and Clement two years after they were married. The deed was prepared by Attorney Alan Mason. It is the first of the instruments placed in evidence in this case apparently drafted by Mr. Mason. At some point, Rosa developed a business relationship with Mr. Mason that continued nearly to the present, as Mr. Mason listed for sale with Rosa properties that he purchased at foreclosure auctions and apparently held in the names of nominees.
The 1981 Deed transferred title from Rosa (as sole owner of the Property) to Rosa and Clement without describing the manner in which they would hold title. Rosa testified that she signed it quickly without reading the instrument, even though by then she had been a practicing real estate agent for several years. She did not explain why she was in a hurry, nor, as noted above, why the transfer needed to occur at that time.
Mr. Mason was deposed after trial at a federal prison where he was serving a sentence for wire fraud and tax evasion. He was disbarred by order of the Supreme Judicial Court on April 12, 2006, for a series of violations of the rules of professional conduct arising in connection with a number of real estate transactions. See, Matter of Alan Mason, 22 Mass. Att’y Disc. R. 550 (2006). At the time of his deposition, he had not reviewed his file on the Hultberg property transfers for a number of years. He testified that it was Rosa’s and Clement’s intention that title be transferred to them either as joint tenants or tenants by the entirety in response to a series of leading questions posed by Rosa’s counsel. He provided no testimony explaining why this properly transfer was being undertaken at that time or any other details concerning the transaction. In 1981, a title search of the Property would have shown that Rosa did not own the Property in fee simple. Nonetheless, the deed refers to the Property as having been conveyed to Rosa (the grantor) by a June 30, 1970 deed. As noted above, that deed transferred title to John and Rosa Tolman; moreover, title to the Property had passed through many owners since 1970. Mr. Mason’s testimony failed to address those issues. The court does not credit Mr. Mason’s testimony and declines to rely on it.[3]
By deed dated August 25, 1983, John Tolman and Rosa, both individually and as Trustees of the Trust, transferred title to both the Property and the Adjacent Parcel to Rosa and Clement, as tenants by the entirety. On that same day, Rosa and Clement sold the Adjacent Parcel to a third party.
According to the exhibits admitted during trial, Rosa and Clement mortgaged the Property five times during the period 1990 though 2002. Four of those mortgages described the property by reference to the 1981 deed from Rosa to Rosa and Clement. The penultimate mortgage (recorded in 1998) described it by reference to the 1983 deed to Rosa and Clement, as tenants by the entirety. In 2006, Rosa attempted to refinance the Property again, on this occasion with the Milberg Credit Union. The Credit Union found that the 1981 deed appeared to transfer title to the Property to Rosa and Clement as tenants in common and that it, therefore, would not grant a loan secured by a mortgage on it, unless Clement’s heirs at law waived their interests. Rosa then filed this action.
RULINGS OF LAW
The legal principles that govern this dispute are well settled. Their application to the facts described above is more difficult.
To the extent that the 1981 Deed conveyed any interest in the Property from Rosa to Rosa and Clement, it did so to Rosa and Clement, as tenants in common. G.L.c. 184, §7 provides that a “conveyance or devise of land to . . . husband and wife, . . . , shall create an estate in common and not in joint tenancy, unless it is expressed in such conveyance or devise that the grantees or devisees shall take jointly, or as joint tenants, or in joint tenancy, or to them and the survivor of them ...” Further, “(tjenants in common have no survivorship rights; at death the interest of a tenant descends to his heirs.” West v. First Agricultrual Bank, 382 Mass. 534, 537 (1981); see, also, Russo v. Russo, 3 Mass.App.Ct. 364, 368 (1975) (“in the event of (a spouse’s] death without a will, one-third of his interest in the property [held as tenants in common] would have passed directly to the [wife] and two-thirds to his issue”). Therefore, if the 1981 Deed was effective in transferring an interest in the Property, and it is not reformed, the defendants would have interests in Clement’s share.
*328 In Ward v. Ward, 70 Mass.App.Ct. 366, 369 (2007), the Appeals Court explained that a deed can only be reformed because of mistake, if the mistake is mutual to the parties. This is true even, as is the case here, where the stated consideration for the properly is less than one hundred dollars; and, especially, where the instrument recites that it is under seal, as the 1981 Deed does. Id. at 371-72. A deed may also be reformed where there has been a scrivener’s error. Id. at 369 citing Lyon v. Parkinson, 330 Mass. 374, 378 (1953).[4] The parties agree that under either basis for reformation of a deed, the party seeking reformation must prove mutual mistake or error “by clear and convincing evidence.” While the court does not find a case directly on point with respect to standard of proof on the facts presented by this case, it also agrees that case law and commentary support the notion that a written instrument, such as the 1981 Deed, should not be reformed unless there is clear and convincing evidence that it does not reflect the intent of both parties, and that would be true whether that results from mutual mistake or the error of the draftsman. See Covich v. Chambers, 8 Mass.App.Ct. 740, 748 n. 12 (1979), citing, Restatement (Second) of Contracts §297, Comment c. In the present case, the court’s finding would be the same whether it applied this higher clear and convincing standard or simply the preponderance of the evidence standard.
The court finds that Rosa has not proven that she and Clement had mutually agreed that they would hold title as joint tenants, or tenants by the entirety, or that Mr. Mason simply made a scrivener’s error. John and Rosa Tolman transferred ownership of the property with alarming frequency. They held it as tenants by the entirety; for a time Rosa was sole owner; someone named Ward owned it; Ward apparently transferred the Property back to John and Rosa in some form of common ownership, and they conveyed it to themselves as Trustees for a Trust of which their children were the beneficiaries. The economic consequences of, or reasons for, these transfers was unexplained at trial. Apparently, neither John nor Rosa pointed out to the Probate Court Judge who presided over their divorce that the Property was held in a Trust, or perhaps that Trust was revoked between July 1976, when the Property was conveyed to it, and November 1977 when the judgment of divorce entered — if so, there is no record reference of that transfer.
Rosa offered no testimony as to why she transferred ownership of the Property in April 1981 — two years after she and Clement were married and more than two years after Clement sold his own home and began to help support Rosa and her family. On August 25, 1983, again assisted by Mr. Mason, both the Properly and the Adjacent Parcel were transferred once again to Rosa and Clement, as tenants by the entirely. This time the grantors were identified as Rosa and John Tolman, both individually and as Trustees of the Tolman children. On this occasion, however, there appeared to be a reason for the timing of this transfer and the efforts undertaken to insure that clear title passed: that same day the Adjacent Parcel was sold to a third party. Notably, if the 1981 Deed contained a scrivener’s error, that error could have easily been corrected in 1983 by having Clement transfer his interest back to Rosa. Instead Rosa and Mr. Mason proceeded as if the 1981 Deed had never been executed or recorded. This is particularly troublesome in light of the fact that by 1983 Rosa was an experienced real estate agent and was represented by an experienced real estate attorney. Clement, on the other hand, would have not necessarily have understood the subtleties of the real estate transactions being undertaken.
On this record, the court cannot credit Rosa’s uncorroborated testimony that she and Clement intended that they receive title as tenants by the entirely or joint tenants and/or that Mr. Mason made a scrivener’s error.
The court also notes that it does not find that Clement expressly chose to hold the Property as tenants in common with Rosa as a means of leaving some inheritance to his children. There is clearly insufficient record evidence to support that finding. But the burden of proof rests with Rosa. Rather, the court finds that the obvious enmity between Rosa and Clement’s children colored almost all of their testimony, nearly all of which was irrelevant to the intentions of the parties to, or drafter of, the 1981 Deed — a topic on which there was veiy little testimony.
Finally, the court also points out what this decision does not hold. It does not hold that the 1981 Deed necessarily transferred any interest in the Property to Clement. It appears that the Property may have been owned by John and Rosa as Trustees for the Trust in 1981. It was certainly deeded to the Trust in 1976. Even though the Trust was a revocable, inter vivos trust: “The law of Massachusetts is plain that a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms.” Bongaards v. Millen, 440 Mass. 10, 15 (2003), citing, Phelps v. State St Trust Co., 330 Mass. 511, 512 (1953). If the Properly was owned by the Trust and not Rosa in 1981, Rosa had “nothing to convey.” Id. The pleadings did not raise the issue of whether the Trust was invalid or revoked before the 1981 Deed was executed, or whether the conveyance of the Properly to the Trust was somehow infirm, and no evidence was offered at trial on either of those points. Further, if the Trust was revoked, or for some reason invalid, and John and Rosa held the Property as tenants by the entirety at the time of their divorce, they then became tenants in common upon the judgment of divorce nisi becoming final, by operation of law. See Bernatavicius v. Bernatavicius, 259 Mass. 486, 490 (1927). Defendants’ suggestion that the judgment of divorce, *329 which directed John to transfer his interest in the Property to Rosa, was self-effectuating is simply wrong.[5] The defendants have also argued in their post-trial pleadings that the last valid transfer of the Property before 1981 was the November 1970 conveyance from John and Rosa, as tenants by the entirety, to Rosa, individually. That issue also was not raised in the pleadings and certainly was not addressed at trial.
The pleadings in this case did not ask the court to settle issues regarding title to the Property, other than to reform the 1981 Deed, and insufficient evidence was offered for the court to undertake this task. The court’s holding is therefore limited to deciding the issue raised by the prayer in Rosa’s complaint. The court rules that the plaintiff has not proven grounds for reformation of the 1981 Deed.
ORDER
For the foregoing reasons, judgment shall enter declaring that the April 7, 1981 deed conveying the Property to Rosa and Clement is not reformed and dismissing the complaint; statutory costs to be awarded to the defendants.

First names of the parties will be used for clarity.

Mr. Mason also prepared a deed transferring the Adjacent Property from Rosa to Rosa and Clement as “joint tenants” on June 26, 1981. That deed was not recorded until June 10, 1982. It seems clear that Rosa did not own that parcel in fee simple either. Mr. Mason’s testimony did not address the Adjacent Parcel.

A drafting error would appear to be a subset of mutual mistake of the parties, as in that event the instrument would fail to reflect the mutual intent of the parties to it.

General Laws chapter 208 governs divorce; defendants’ reference to chapter 209 is inapposite.