McDonough, Edward J., J.
In 2011, the plaintiff, Financial Freedom Acquisition, LLC (“Financial”), filed a five-count complaint against the defendants, Dorothy Laroche (“Laroche”) and her son, Edward Laroche (“Edward”). The case concerns a purported mortgage between Financial and Laroche, where the security for the mortgage was real property located at 87 Cyran Street, Chicopee, Massachusetts (the “Property”). Following a bench trial commencing on July 16, 2013, and review of all testimony, exhibits, stipulations of the parties, and post-trial filings completed July 26, 2013, I find and rule as follows with respect to the claims in this action.[2]
Findings of Fact
Below are my findings, including but not limited to determinations of the credibility, weight, and probative value of the evidence adduced at trial and reasonable inferences drawn from that evidence.
Laroche and her now deceased husband, Robert F. Laroche (“Robert”), took title to the Property on April 22, 1966, as tenants by the entirety. (Exh. 2.) Robert passed away in 1996, which vested Laroche with title to the Property in fee simple. Edward is Laroche’s only surviving child and he currently resides in Florence, Massachusetts.
In August 2004, Laroche commenced estate-planning activities. In particular, on August 3, 2004, she conveyed the Property to Edward, reserving for herself a life estate. On August 10, 2004, the transfer, for consideration of one dollar, was recorded with the Hampden County Registxy of Deeds. (Exh. 3.) At the time, Laroche did not notify Edward, and he was not aware of the conveyance.
In 2006, Laroche began investigating a home equity conversion mortgage (“HECM”), more commonly known as a reverse mortgage, in order to use the equity in the Property to supplement her other income in order to pay her monthly expenses. On May 16, 2006, in accordance with reverse mortgage requirements, Laroche was counseled, via telephone, by an agent of Plymouth Redevelopment Authority, a counselor approved by the United States Department of Housing & Urban Development (“HUD”). Edward was not present at the meeting. After that conversation, Laroche signed the HUD counseling certification form. Although the form required all homeowners on the deed to sign, Edward did not sign the counseling certification.
On June 6, 2006, Laroche met Kyle D. Steinbock of Absolute Mortgage Solutions and completed an application for a reverse mortgage. On the application, Laroche named herself as the only titleholder to the Property. During that meeting, Laroche executed several other documents including a Reverse Mortgage Advisor Disclosure where she elected not to seek advice. On June 24, 2006, WPI Title Direct, Inc. notified Absolute Mortgage Solutions, LLC of Edward’s remainder interest in the Property. (Exh. 39.)
Financial conditioned the loan to Laroche on Laroche taking title to the Property in fee simple. Laroche did not ask, and Edward never did convey his interest in the Property to Laroche.
On August 24, 2006, Financial and Laroche executed a reverse mortgage on the Property. The transaction actually consisted of two mortgages (“Security Instrument” or “Mortgage”) and two notes (“Note”) (collectively the “Reverse Mortgage”). Edward was never contacted concerning the Reverse Mortgage and Edward did not sign any of the documents pertaining to the Reverse Mortgage. Financial did not record the Reverse Mortgage. During the entire process leading up to and the execution of the Reverse Mortgage, Laroche did not have the assistance of counsel.
In September 2006, Financial began making payments to Laroche in accordance with the Reverse Mortgage. The payments included a lump sum in the beginning and continued with monthly payments. The payments were made directly to Laroche’s bank account, which was a joint account that named Edward as co-owner. The proceeds from these payments al *542 lowed Laroche to satisfy an existing mortgage with People’s Bank. Additionally, the bank account was used to pay Laroche’s living expenses including food, medical, taxes, utilities, and the like.
Edward did not use the joint account and never wrote any checks from the account. Edward did, however, receive payments from Laroche totaling $2,800.00 issued from the joint account. Edward did not pay taxes on the Property nor did he contribute to the maintenance of the Property.
Conclusions of Law
I. Financial Challenges the Validity of the Deed
In Count V, Financial challenges the validity of the 2004 deed in which Laroche conveyed her fee simple interest to Edward, while reserving a life estate for herself. Financial argues that the transfer of title was not effective because the deed was not properly delivered. If the deed is declared valid, then Financial requests me to find that Edward took his remainder interest with notice of the Reverse Mortgage and, thus, is subject to the Reverse Mortgage.
A. The Validity of the Deed
The parties agree that the delivery of a deed is a question of fact. See Bianco v. Lay, 313 Mass. 444, 448 (1939). Delivery depends on the acts done and the intent with which they are performed. Murphy v. Hanright, 238 Mass. 200, 204 (1921). Here, the evidence clearly indicates that Laroche, with help from counsel, intended a present transfer of the Property in order to put it beyond the reach of a potential nursing home creditor should she, in the future, be forced to reside in such a home. On August 10, 2004, Laroche’s intentions were further clarified when she recorded the deed that conveyed the remainder in fee simple remainder to Edward. See Ward v. Ward, 70 Mass.App.Ct. 366, 371 n.8 (2007), rev. denied, 450 Mass. 1106 (2007) (“the manual delivery of the deed is not necessary to effectuate a transfer of title when the grantor has indicated his intention to deliver by executing and recording the deed”).
Financial contests whether Edward actually accepted the deed. It is a long-standing principle that a deed, which is beneficial to the grantee, is presumed to be accepted. See Soc’y of Middlesex Husbandmen & Mfrs. v. Davis, 44 Mass. 133, 137 (1841). Absent fraud or undue influence, when Laroche, as part of an estate plan, transferred the Property and recorded the deed, the lack of knowledge of the transfer by Edward is not sufficient to nullify the transfer. See Ward, 70 Mass.App.Ct. at 371 (recorded deed that reserved a life estate for the father and transferred remainder in fee to the son was not rescinded or voided merely because the son was not aware of the transfer). There is no evidence or allegations of fraud or undue influence, which are the driving forces in the cases cited by Financial to support its argument that acceptance did not occur. See Juchno v. Toten, 338 Mass. 309, 310 (1959) (plaintiff was a creditor that won a judgment against the grantor, who subsequently transferred the property to his sons, unbeknownst to them); Murphy, 238 Mass. at 202 (faced with legal troubles, grantor transferred property to avoid attachment).
The parties also dispute whether the consideration was “love and affection,” or if it was for one dollar. The argument is irrelevant, however, because a deed under seal precludes an inquiry into whether there was adequate consideration. Mather v. Corliss, 103 Mass. 568, 571 (1870) (a seal implies consideration and “the existence of a consideration is conclusively presumed from the nature of the contract”). Moreover, absent fraud, insufficient consideration or the failure of consideration is not fatal to the deed’s effective transfer of title. Ward, 70 Mass.App.Ct. at 371. Therefore, I find that the “acts done and the intent with which they [were] performed” are sufficient to establish that the 2004 deed passed effective title from Laroche to Edward. See Murphy, 238 Mass. at 204; Ward, 70 Mass.App.Ct. at 371 n.8.
Additionally, I find that the deed must be declared valid as a matter of policy. The central issue in this case is that Financial knew of both Laroche and Edward’s respective interests in the Property and proceeded with the Reverse Mortgage without Edward’s consent. Absent fraud, nullifying the 2004 deed to the Property “would frustrate the purpose of finality in our recording system,” see Ward, 70 Mass.App.Ct. at 370-71 n.7, and would allow mortgagees to perfect security interests years after the mortgage is finalized rather than taking all of the necessary steps prior to the mortgage being issued. This practice would effectively allow mortgagees to disregard constructive notice in a manner that is not available to other purchasers for value.
B. Edward’s Interest is Not Subject to the Mortgage
Edward did not take his interest subject to the Reverse Mortgage. The record is clear that Financial never recorded the Reverse Mortgage and, therefore, the constructive notice of the recording act does not protect Financial. See G.L.c. 183, §4. In order to show that Edward’s interest is subject to the Reverse Mortgage, Financial must prove that Edward accepted the deed with actual notice of the Reverse Mortgage. See Selectmen of Hanson v. Lindsay, 444 Mass. 502, 510 (2005) (actual notice is required when dealing with an unrecorded instrument).
Actual notice is “construed with considerable strictness. Knowledge of facts which would ordinarily put a party upon inquiry is not enough (citations omitted).” McCarthy v. Lane, 301 Mass. 125, 128 (1938). The burden of showing actual notice is on Financial. See Tramontozzi v. D’Amicis, 344 Mass. 514, 517 (1962). The evidence shows that Edward first had learned of the Reverse Mortgage in 2011, *543 when Financial contacted him and demanded that he sign the deed back over to Laroche. Even if I agreed with Financial that the acceptance of the deed and the notice of the Reverse Mortgage occurred contemporaneously, merely learning of a possible mortgage interest is insufficient to move Edward beyond inquiry notice status. Cf. McCarthy, 301 Mass. at 128 (references on deeds in the chain of title does not require a finding of actual knowledge). His refusal to deed the property back was an immediate acceptance of the deed because he conducted a sufficient act of dominion to accept the transfer. See Juchno, 338 Mass. at 312 (acts of dominion create implied acceptance). Financial has not carried its burden because, at best, it can only show that Edward had inquiry notice of the Reverse Mortgage at the time Financial asserts he accepted the deed. Therefore, Edward did not take his interest in the Property subject to the Reverse Mortgage.
II. Financial Seeks Declaratory Relief
In Count II, Financial asks me to issue an order declaring that Financial has a mortgage on the property and that the defendants’ rights are subordinate to those of Financial.[3] In opposition, the defendants seek to have the Note and the Mortgage declared invalid, or illegal, because they do not comply with the HUD regulations. After consideration of both HUD regulations and Massachusetts law, I decline to put Financial in any position other than the position in which it put itself.
A. HECM Qualifications
To obtain a HECM mortgage, one must be sixty-two years of age or older, hold title to the entire property being mortgaged, have a satisfactory credit record, use the property as her principal residence, meet the requirements for the disclosure and verification of her social security number, and must receive the necessary counseling. See Lustgarten v. Bank of Am. Loan Servicing, LP, 2011 WL 1233232 at *2 (D.Mass.2011), citing 24 C.F.R. §206.33-.41. This entire action is centered on the fact that Laroche did not hold title to the entire property. See 24 C.F.R. §206.35 (2006).
HUD regulations require that the mortgage “be on real estate held in fee simple.” 24 C.F.R. §206.45(a) (2006); see also In re Peake, 480 B.R. 367, 372 (Bankr.D.Kan.2012) (even though the spouse was not on the deed, her signature was required because of the state’s surviving spouse statute). HUD allows a life estate holder to execute a HECM mortgage, but only if both the life tenant and the future interest holder execute the mortgage. See 24 C.F.R. 206.35 (2006); Mortgagee Letter, U.S. Dep’t of Hous. & Urban Dev., 1997-15 (Apr. 24, 1997) (all future interest holders must execute the mortgage to ensure the mortgage is secured by a fee simple). At the time the Reverse Mortgage documents were executed, Financial knew that Laroche had only a life estate in the Property. It is incumbent upon Financial to show that Edward, as the future interest holder, executed the Reverse Mortgage in order to establish that the Property was the security interest for the Reverse Mortgage. See Peake, 480 B.R. at 372 n.26. Financial never contacted Edward, despite the fact that it knew of his interest and his contact information was provided on Laroche’s loan application. Edward did not execute the Reverse Mortgage; consequently, it was not executed in accordance with HUD guidelines. See 24 C.F.R. 206.35 (2006).
At issue is the effect that this failure to comply with the HUD guidelines has on the validiiy of the Reverse Mortgage. Although HUD can be viewed narrowly as an insurer for loans that are issued in accordance with its regulations, others view the HECM statute and its regulations as requiring and authorizing “HUD to regulate the offering of reverse mortgages.” Wiseman v. First Mariner Bank, 2013 WL 5375248 at *26 (D.Md.2013) (discussing 12 U.S.C. §1715z-20 and 24 C.F.R. part 206). A Massachusetts federal court stated that, to qualify for a HECM loan, one must meet the criteria established by the HUD regulations. See Lustgarten, 2011 WL 1233232 at *2. A Connecticut court stated that a reverse mortgage would be invalid if the appraisal of the property were conducted in violation of the HUD regulations. See Wells Fargo Bank, N.A. v. Baron, 2008 WL 2930320 at *3 (Conn.Super.Ct. 2008) (refusing summary judgment because the appraisal process was a question of fact).
In accordance with these cases, the defendants have a valid position, in that the HUD regulations apply to the offering of HECM loans. See Wiseman, 2013 U.S. Dist. LEXIS 136229 at *26. When Financial executed the Reverse Mortgage documents, it knowingly offered a HECM loan to an unqualified borrower because Laroche did not hold title to the entire estate. See Lustgarten, 2011 WL 1233232 at *2. The violation of a HUD condition of qualification makes the Reverse Mortgage invalid. See Baron, 2008 Conn.Super. LEXIS 1729 at *3. The question arises, however, whether Financial’s failure to abide by the HUD regulations affects only the Security Instrument of both the Security instrument and the Note.
B. The Security Instrument
The Security Instrument is not compliant with HUD regulations because the mortgage is not secured by a fee simple. See 24 C.F.R. §206.35 (2006); Mortgagee Letter, U.S. Dep’t of Hous. & Urban Dev., 1997-15 (Apr. 24, 1997). Declaring the Security Instrument invalid under the HUD regulations, as it relates to the fee, is consistent with Massachusetts law. Absent Edward’s consent, the Reverse Mortgage, as a matter of law, cannot encumber Edward’s interest. See G.L.c. 184, §9; Poulos v. Fin. Freedom, 21 LCR 411, 414 (Mass.LandCt. 2013); see also Curtiss v. Sheffield, 213 Mass. 239, 244 (1913) (a conveyance by a tenant in common of his undivided interest, whether in fee or *544 by mortgage, is invalid as against his cotenants without their consent). Accordingly, under HUD regulations and Massachusetts law, the Security Instrument is invalid as it relates to Edward’s fee simple interest in the Property.
When not secured by the fee, HUD regulations are silent as to the effect of the Note and the mortgage on the life tenant. By contrast, under Massachusetts law, the only security on the Note is the interest held by Laroche — her life estate in the Property. See Poulos, 21 LCR at 414.
C. The Note
A HECM is a non-recourse loan. “Non-recourse means simply that if the borrower (or estate) does not pay the balance when due, the mortgagee’s remedy is limited to foreclosure and the borrower will not be personally liable for any deficiency resulting from the foreclosure.” Mortgagee Letter, U.S. Dep’t of Hous. & Urban Dev., 2008-38 (Apr. 24, 1997); see also Bennett v. Donovan, 703 F.3d 582, 585 (D.C.Cir. 2013) (“the lender has no recourse to any of the borrower’s other assets”).
Considering the Note on its face, the terms are consistent with HUD’s explanations on how Financial can collect on the Note. Specifically, paragraph (4) (c) of the Note provides that the lender may only enforce the debt through the sale of the property covered by the Security Instrument and that the lender shall not be permitted to obtain a deficiency judgment against the borrower. See generally Chandler v. Wells Fargo Bank, N.A., 2014 WL 31315 at *2-4 (N.D.Ca. 2014) (matching HUD regulations to the mortgage documents) . The Note is clear that Laroche is not personally liable on the Note, she is protected from deficiency judgments, and Financial’s only recourse to enforce the debt is through the Security Instrument. Therefore, under both HUD regulations and the terms of the Note, Financial can only enforce the debt through the Security Instrument.
Financial has not alleged that the Note is in default.[4] The Security Instrument is only valid against Laroche’s interest in the Property. See G.L.c. 184, §9; Poulos, 21 LCR at 414. In the future, if the Note becomes due because of Laroche’s death, Financial’s security is limited to Laroche’s life estate, which will terminate at her death. See Mitton v. Burrill, 229 Mass. 140, 145 (1918) (life estate ends at the death of the measuring life). If the Note becomes payable for one of the other enumerated reasons in paragraph (7) of the Note, then Financial can seek to enforce the debt by foreclosing on Laroche’s life estate. In that case, Financial would have a life estate in the property, measured by the life of Laroche and with all the obligations to Edward that a life tenant typically owes the remain-derman. See Breare v. Board of Assessors, 350 Mass. 391, 393 (Mass. 1966) (life estate pur autre vie); see also Altobelli v. Montesi, 300 Mass. 396, 398 (1938) (a purchaser at foreclosure becomes a tenant in common with the other cotenant).
As a result, even if the Note is declared valid, Financial has little to no recovery. Both the HUD regulations and the terms of its agreement with Laroche state that she has no personal liability on the loan. The Security Agreement is ineffective against the entire property because Edward never signed it. In short, we have a lender who agreed to loan non-recourse money to an unqualified borrower, which was to be secured by the Property, but the lender failed to properly obtain the security interest and proceeded anyway. As a result, Financial finds itself in the position of its choosing and I see no reason to declare otherwise.
Ill Financial Seeks Equitable Remedies
Financial seeks the equitable remedies of unjust enrichment (Count I) and equitable subrogation (Count IV) against both Laroche and Edward.
A. Unjust Enrichment
Financial grounds its claim of unjust enrichment against Laroche in the fact that it paid off the existing mortgage on the Property for Laroche and that it made both a lump sum payment and monthly payments to Laroche. As to Edward, Financial claims that he was unjustly enriched because he did not have to provide for the care of his mother while Financial was making payments, that he, as remainderman, benefited from the payment of the balance on the existing mortgage, and, finally, that he received payments of $2,800.00 from Laroche.
1. Financial’s Claim against Laroche for Unjust Enrichment
A court can order a party who has been unjustly enriched to repay the injured party through the equitable remedy of restitution. See Keller v. O’Brien, 425 Mass. 774, 778-79 (1997) (“restitution is appropriate only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [her] to retain it” [citation omitted]). When the obligations of the parties are defined by contract, a plaintiff cannot bring a claim of unjust enrichment. See Boston Med. Ctr. Corp. v. Sec’y of the Executive Office of Health & Human Servs., 463 Mass. 447, 467 (2012), citing Restatement (Third) of Restitution and Unjust Enrichment §2 (2011). The unjust enrichment claim against Laroche fails because the payment schedule, when the Note becomes due, and how Financial can enforce the debt are all defined within the Note. See id. (to the extent that a contract defines the obligations of the parties, the contract displaces any inquiry into unjust enrichment).
2. Financial’s Claim against Edward for Unjust Enrichment
The claim of unjust enrichment against Edward also fails. The fact that a person benefits from another “is not of itself sufficient to require the other *545 to make restitution.” Cox v. Cox, 56 Mass.App.Ct. 864, 873 (2002). For the doctrine of unjust enrichment to apply, “(t]he benefit must be unjust, a quality that turns on the reasonable expectations of the parties.” Community Builders, Inc. v. Indian Motorcycle Assocs., Inc., 44 Mass.App.Ct. 537, 560 (1998). In none of its claims against Edward has Financial demonstrated that there was a reasonable expectation that Edward would pay any of Laroche’s liabilities or that Edward should have been reasonably expected to be directly liable.
Financial has failed to provide any law that indicates that Edward, absent a contract, has any obligation to pay the debts of his mother. Compare Northgate Healthcare Servs. Corp. v. Moores, 2012 WL 6212792 at *3 (Mass.Super.Ct. 2012) [30 Mass. L. Rptr. 449] (neither the nursing home nor the son reasonably expected the son to pay for his mother’s care), with Salamon v. Terra, 394 Mass. 857, 859-60 (1985) (both parties understood that a third party would pay for houses built on the defendant’s land). Absent a contract, maintenance of the Property including paying taxes and upkeep is the responsibility of the life tenant and not the remainderman. See Matteson v. Walsh, 79 Mass.App.Ct. 402, 405-06 (2011) (remainderman can bring an action in waste against life tenant). I credit Edward’s testimony that his name appeared on Laroche’s checking account only as a convenience, and Financial has failed to prove that Edward accessed the account for any reason at all. The claim that Laroche’s payments of $2,800.00 enriched Edward to Financial’s detriment is speculative because Laroche has other sources of income. In sum, any claims in restitution for the payments made by Financial to Laroche, which were owed to a third party by Laroche, lie against Laroche and not Edward or the third party. See Restatement (First) of Restitution, §110 (1937) (“a person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person”).
Financial must look to whom credit was extended for payment, that is, “the one who was expected to pay and who in fact expected to pay or as a reasonable man should have expected to pay.” La Chance v. Rigoli, 325 Mass. 425, 427 (1950), citing Restatement (First) of Restitution, §110 (1937); see also Cascaden v. Magryta, 225 N.W. 511, 511-12 (1929) (no person can be sued for breach of contract who has not contracted, and the doctrine of unjust enrichment cannot be used to circumvent this principle merely by substituting one promissor or debtor for another). Since Edward was neither a borrower nor a cosigner of any of the loans or mortgages in this case, Edward is not liable in restitution because there was no reasonable expectation that he would pay Laroche’s liabilities.
B. Equitable Subrogation
In Count IV, Financial argues that it is entitled to equitable subrogation because the People’s Bank mortgage was discharged by mistake, and that equity should set aside the discharge and reinstate the mortgage. “[A] court acting under general principles of equity jurisprudence has broad power to reform, rescind, or cancel written instruments, including mortgages, on grounds such as fraud, mistake, accident, or illegality.” Michaud v. Forcier, 78 Mass.App.Ct. 11, 17 (2010), quoting Beaton v. Land Court, 367 Mass. 385, 392 (1975).
Equitable subrogation is one of the court’s “broad power[s] over mortgages” and it allows a party that paid the debt of another to be entitled to the rights and security enjoyed by the original creditor. See E. Boston Sav. Bank v. Ogan, 428 Mass. 327, 328-29 (1998). “In other words, the new mortgage given by a mortgagor, who used the proceeds of the new mortgage to extinguish an earlier mortgage, may receive the same priority once given to the earlier mortgage.” Id. at 330.
The degree of the subrogee’s knowledge and its associated actions are critical when deciding whether to allow for equitable subrogation. Wells Fargo Bank v. Nat'l Lumber Co., 76 Mass.App.Ct. 1, 7 (2009). As previously discussed, Financial knew of Edward’s property interest and proceeded with the Reverse Mortgage without his consent. More perplexingly, Financial asks me to protect its interest, or create one, through equity, even though Financial never recorded the purported mortgage to protect its own interest and failed to abide by its own closing condition. Based on its knowledge and actions, Financial has failed to convince me that equitable subrogation should be granted.
Additionally, equity claims, based on mistake, can be denied when a claimant assumes the risk by making a unilateral decision to act in conscious ignorance of relevant circumstances. See Restatement (Third) of Restitution and Unjust Enrichment §5 (2011). Even if I agreed with Financial that a mistake occurred, when Financial proceeded with the Reverse Mortgage without the deed being signed over, it made a conscious choice to act in the face of a recognized uncertainly. See Restatement (Third) of Restitution and Unjust Enrichment §5 (2011); see also Nat. Bank v. FCC Equip. Fin., Inc., 801 N.W.2d 17, 21 (Iowa Ct.App. 2011) (“[plaintiff] is a sophisticated lender who failed to protect itself from a credit risk. Having received a photocopy of the check, [plaintiff] took its chances. In short, this is clearly a situation where [plaintiff] bore the risk of the mistake”). Therefore, Financial, with full knowledge of all the facts, finds itself in the position it chose to put itself into, and is not entitled to equitable subrogation. See Childs v. Stoddard, 130 Mass. 110, 112 (1881).
*546 IV. Financial’s Claim of Breach of Contract against Laroche
In Count III, Financial alleges breach of contract against Laroche. In support of its claim, Financial argues that Laroche represented in both the application and the Reverse Mortgage documents[5] that she was the holder of the Property in fee simple. (Exh. 19.) Additionally, Financial argues that Laroche signed a compliance agreement (Exh. 18), which indicates that Laroche will assist Financial to rectify issues that stem from closing.
A. Laroche’s Representations that She Was the Titleholder
Financial’s argument for breach based on Laroche’s application can be likened to a misrepresentation argument, and I am not persuaded. Generally, the elements of misrepresentation are (a) a provision in the course of a transaction of the defendant’s pecuniary interest, (b) of false information for the guidance of others in their business transactions, (c) without the exercise of reasonable care or competence in the acquisition or communication of the information, (d) causing justifiable reliance by, and (e) resulting in pecuniary loss to, the plaintiff. See Cumis Ins. Society, Inc. v. BJ’s Wholesale Club, Inc., 455 Mass. 458, 471-72 (2009).
The evidence presented at trial shows that Financial was not justified in relying on Laroche’s statements. See id. at 474 (the plaintiffs reliance on the defendant’s false statement must be reasonable and justifiable under the circumstances). On August 10, 2004, the deed transferring the Property to Edward and reserving a life estate was recorded, thereby giving Financial constructive notice of Laroche’s interest before the 2006 Reverse Mortgage. See Nat’l Lumber Co. v. LeFrancois Const. Corp., 430 Mass. 663, 669 (2000) (finding that because the lien was recorded, the new homeowner took title to a property with notice of the lien recorded thirteen days prior to closing). Furthermore, Financial had actual knowledge because its own internal document indicates that Edward holds the title subject to Laroche’s life estate. (Exh. 31.) Financial had the option either to contact Edward and obtain his signature on the mortgage or to refuse to proceed any further until Edward transferred the property to Laroche in fee. Financial did neither. Instead, it proceeded with closing as if Laroche were the titleholder, thereby consciously ignoring the defect in the Reverse Mortgage. Financial has failed to meet its burden to prove that any reliance on Laroche’s representations were justified or reasonable.
Additionally, the Security Instrument covenant states that the “[b]orrower is lawfully siesed of the estate hereby conveyed and has the right to mortgage, grant and convey the property.” (Exh. 11.) The document does not refer to what type of estate is being mortgaged, and a sophisticated lender using words such as “siesed” and “estate” with a layperson ought to be more specific. There is no misrepresentation because Laroche is the life tenant, and “a life estate is alienable by the life tenant, and [s]he can accordingly convey [her] estate to a third person, or mortgage it, or lease it for a term of years.” Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 88 n.20 (2008). Therefore, the claims of misrepresentation against Laroche fail.
B. Compliance Agreement
Financial’s claim that Laroche breached the compliance agreement fails. Generally, the compliance agreement requires the borrower’s cooperation in the event that any documents need to be corrected after the closing, and the failure to cooperate may delay the distribution of funds. I refuse to interpret the scope of the compliance agreement to extend to issues that are beyond the control of Laroche. Once Laroche conveyed title to Edward, she could no longer assert control over the fee simple. Bongaards v. Millen, 440 Mass. 10, 15 (2003) (one cannot convey property that she does not own). Edward was not a party to this agreement, even though Edward is the only one who can convey the fee simple. Figueiredo v. Silvia, 2 Mass.App.Ct. 350, 351 (1974) (grantee can take only as much as the grantor can convey). Requiring Laroche to force Edward to deed the property back to her, which he has no legal obligation to do, must be beyond the scope of the agreement and, therefore, Laroche is not in breach.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
Final judgment shall enter in the defendants’ favor on all of the claims asserted by the plaintiff.

 fhe Complaint pleaded the following causes of action: Count I/Unjust Enrichment (both defendants); Count II/De-claratoiy Relief (both defendants); Count III/Breach of Contract (Laroche); Count IV/Equitable Subrogation (both defendants); Count V/Validity of the Deed (both defendants).

 Financial also requests declaratory relief for unjust enrichment, but that is the claim raised in Count I, discussed in Part III.

 Paragraph (4) (a) of the Note requires the borrower to pay in full the principal and accrued interest in the event that the lender demands payment under paragraph (7). Paragraph (7) allows the lender to demand payment at the death of the borrower, when the borrower sells the property, if the property ceases to be the borrower’s primary residence, if the borrower does not reside at the property for a period of twelve consecutive months, or if an obligation in the security instrument is not performed. Currently, none of these situations apply.

 The provision in question appears in the Security Instrument and reads, in part: “BORROWER COVENANTS that Borrower is lawfully siesed of the estate hereby conveyed and has the right to mortgage, grant and convey the Property.”