NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-605                                        Appeals Court

DEBORAH A. ALLEN[1]  vs.  HAROLD J. ALLEN, JR.

No. 13-P-605.

Suffolk.    February 12, 2014.  -  September 16, 2014.

Present:  Trainor, Katzmann, & Hanlon, JJ.

Deed, Acknowledgement.  Real Property, Deed, Conveyance, Record
    title.  Notice.  Practice, Civil, Failure to make
    objection, Motion to amend.

Civil action commenced in the Land Court Department on
January 19, 2010.

A motion to amend a counterclaim was heard by Gordon H.
Piper, J., the case was tried before him, and a motion to amend
the judgment or for a new trial was considered by him.

Helen G. Litsas for the defendant.
Amy M. McCallen for the plaintiff.

KATZMANN, J.  This case concerns competing claims between

adult siblings for the ownership of the house formerly owned by

_____

[1] Individually, as trustee of the Allen Realty Trust, and as
executrix of the estate of Ethel M. Allen. In her brief, the
plaintiff avers that she has been succeeded by her sister Nancy
Oldro as executrix of the estate.

their now-deceased parents. Harold Allen, Jr., (Harold) traces his ownership to a July, 2001, deed (July deed) from the siblings' mother, Ethel Allen (Ethel). Harold's sister Deborah Allen (Deborah) claims ownership by virtue of a November, 2001, deed (November deed) from Ethel to the Allen Realty Trust (Trust), of which Deborah was a cotrustee along with Ethel.

Deborah brought an action alleging that the July deed was forged and claiming that the property was rightfully hers.[2] Following a jury-waived trial, a judge of the Land Court determined that, because the acknowledgment of the July deed was defective, its recording did not give constructive notice to Deborah of the conveyance and the deed was not enforceable against her. This is an issue of first impression, not yet addressed by our appellate courts.

On appeal, Harold argues (1) pursuant to exceptions provided in the recording statute, his deed was not required to be recorded, or, alternatively, the recording statute's safe harbor provision protects his claim to the property; (2) the judge's decision exceeded the scope of the pleadings; (3) because of clearly erroneous findings, there was

---

[2] The rights of other siblings, who, along with Deborah, are beneficiaries of the Trust, are also affected by the determination as to which deed is valid. Deborah's complaint does not purport to divest the other siblings of their interest in the property.

insufficient evidence to support the judgment; and (4) the judge erred in denying Harold's motion to amend his counterclaim.  We affirm.

Background.  We summarize the relevant facts as found by the judge in his memorandum of decision and postjudgment order, supplemented as necessary with undisputed facts from the record. We reserve certain details for discussion with the specific issues raised.

Deborah and Harold are two of the six children of Ethel and Harold Allen, Sr. (Harold, Sr.).  Harold, Sr., and Ethel owned a house at 257 Marrett Road, in Lexington, and lived in that home for many years.  Over the course of their marriage, Harold, Sr., and Ethel created numerous estate plans, which consistently excluded their two sons, Harold and Lawrence, because Harold, Sr., and Ethel had provided for them through lifetime gifts.[3] After Harold, Sr., died, Ethel continued this pattern.[4]

---

[3] In 1987, Harold, Sr., transferred a one-third ownership stake in the family home heating oil business, Sherwood Oil Co., Inc., to Harold and a one-third ownership stake in the business to Lawrence.

[4] Ethel's final will, executed on February 28, 2008, stated:

"I have intentionally and not as the result of any accident or mistake, made no specific provision for my sons, LARRY ALLEN and HAROLD J. ALLEN, Jr., and their issue, not for lack of love or affection, but rather because my sons have been provided for by my late Husband and myself."

The events at the center of this dispute occurred during 2001. In late April, 2001, Ethel began the process of moving from her Lexington home to live with one of her daughters, Nancy Oldro, in Nashua, New Hampshire. After evaluating conflicting testimony, the judge concluded that Ethel had fully moved in by mid-July, 2001.

Harold traces his claim to a deed Ethel executed on July 23, 2001, conveying the house to Harold and to Ethel as joint tenants with a right of survivorship. This deed is the subject of the present dispute. Attorney Paul Maloy prepared the deed and signed a certificate of acknowledgment, dated July 23, 2001, which reads: "Then personally appeared the above named Ethel M. Allen and acknowledged the foregoing instrument to be her free act and deed, before me, [/s] Paul F. Maloy- Notary Public." Maloy recorded the deed on August 10, 2001. We reserve further details regarding the execution and acknowledgment of the deed for the discussion below.

On November 30, 2001, Ethel established the Allen Realty Trust and executed a deed conveying the Lexington property to herself and to Deborah as cotrustees of the Trust, reserving a life estate for herself. She specified that the property would be sold upon her death and the proceeds divided among several of

her descendants, including Deborah.[5]  This deed was recorded on February 8, 2002.

Only after Ethel died on December 20, 2009, did Harold reveal the July 23, 2001, deed.  Neither Deborah nor her sister Nancy nor the attorney who prepared the November deed had discovered the July conveyance.[6]  In January, 2010, Deborah commenced the present action, disputing Harold's claim to the property.  After a trial that included forensic testimony regarding the July deed, the judge found that Ethel's signature on the July deed was authentic.  But he determined that, contrary to the certificate of acknowledgment on the deed, Ethel never appeared before Attorney Maloy to acknowledge the deed.  The judge found that, instead, she had signed the deed in front of Harold, who then brought it to Maloy for his signature.  Harold appeals from the judgment and from the denial of his postjudgment motions.[7]

---

[5] Once again, she did not include Harold or Lawrence as a beneficiary.

[6] The judge noted that the conveyances to Harold and the trustees were both for nominal consideration, and observed, "[T]here is nothing to suggest that the Trustees looked in the Registry before taking their deed, or had any compelling reason to do so, given the estate planning context of their acquisition of title.  A genuine third party purchaser for value, on the other hand, would have been remiss in not consulting the record before paying consideration."

[7] Harold makes no separate argument with respect to the denial of his postjudgment motions.

Standard of review. "In reviewing a matter wherein the trial judge was the finder of fact, '[t]he findings of fact . . . are accepted unless they are clearly erroneous[] [and] [w]e review the judge's legal conclusions de novo.'" Crown v. Kobrick Offshore Fund, Ltd., 85 Mass. App. Ct. 214, 224 (2014), quoting from T.W. Nickerson, Inc. v. Fleet Natl. Bank, 456 Mass. 562, 569 (2010) (citations omitted). See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Springgate v. School Comm. of Mattapoisett, 11 Mass. App. Ct. 304, 309-310 (1981), quoting from United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Furthermore, "[i]n applying the 'clearly erroneous' standard, rule 52(a) requires that 'due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'" Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997). Thus, "[s]o long as the judge's account is plausible in light of the entire record, an appellate court should decline to reverse it." Id. at 510. It is the appellant's burden to show that a finding is clearly erroneous. Hanover Ins. Co. v. Treasurer & Receiver Gen., 74 Mass. App. Ct. 725, 730 (2009).

Discussion. 1. The recording statute. a. Latent defect in certificate of acknowledgment.[8] "[O]rdinarily an acknowledgment is not an essential part of a deed; but if it is desired to record the deed in order to charge the world with notice of the conveyance, then it is necessary that the deed be acknowledged and that a certificate reciting this fact be attached to the deed. Doubtless, that is the principal function of a certificate of acknowledgment." McOuatt v. McOuatt, 320 Mass. 410, 413-414 (1946) (McOuatt). See G. L. c. 183, § 4, as appearing in St. 1973, c. 205 ("A conveyance . . . shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it . . . is recorded in the registry of deeds for the county or district in which the land to which it relates lies"); Gordon v. Gordon, 8 Mass. App. Ct. 860, 862-863 (1979) ("[T]itle to real estate may be transferred by a deed which has not been acknowledged, and such deed is good against the grantor and his heirs and those having actual notice").

The certificate of acknowledgment "furnishes formal proof of the authenticity of the execution of the instrument when presented for recording." Id. at 862, citing McOuatt, 320 Mass.

_____

[8] On appeal, Harold argues that the judge's consideration of this issue exceeded the scope of the pleadings. See part 2, infra. Because we determine that the issue was fairly litigated, we first consider the issue on the merits.

at 413-414.  "The certificate of acknowledgment is of evidentiary character, and the taking of the acknowledgment has always been regarded in this Commonwealth as a ministerial and not as a judicial act and the recitals contained in the certificate may be contradicted."  McOuatt, supra at 413.

In McOuatt, the Supreme Judicial Court held that where an acknowledgment had not actually occurred, a facially correct certificate of acknowledgment failed to satisfy the statutory requirement that in order for a deed conveying property between spouses to be valid, it must be acknowledged and recorded.[9] McOuatt, supra at 415-416 (applying the then-existing version of G. L. c. 209, § 3).  Here, as in McOuatt, the deed included a facially correct certificate of acknowledgment, with the required signature and recitals, and was recorded.  Also, as in McOuatt, the judge here concluded that the acknowledgment never actually occurred.

Notwithstanding the facially correct certificate of acknowledgment, because the July deed was never actually acknowledged, it was not entitled to be recorded.  See G. L. c. 183, § 29 ("No deed shall be recorded unless a certificate of its acknowledgment or of the proof of its due execution, made as

---

[9] Because the conveyance was void on these grounds, that court did not reach the question we face today regarding constructive notice to subsequent grantees.

hereinafter provided, is endorsed upon or annexed to it");[10] Dole v. Thurlow, 12 Metc. 157, 163 (1846) ("[A]s a prerequisite to recording, acknowledgment, or proof by one or more subscribing witnesses, was necessary.  Actual recording, without one of these prerequisites, would not give effect to the deed").

An improvidently recorded deed cannot give constructive notice of the conveyance.  See Graves v. Graves, 6 Gray 391, 392-393 (1856) (where assignment was recorded notwithstanding fact that it had not been acknowledged, court held that the assignment was improvidently recorded, the recorded document did "not operate as constructive notice of the execution of the assignment . . . as against [a] . . . creditor . . .; and therefore the title of the . . . creditor, though subsequent in time, takes precedence").

As in McOuatt, the facially correct certificate of acknowledgment does not remedy the absence of a proper acknowledgment.  See McOuatt, supra at 413, 415.  Indeed, as the judge here observed, to determine otherwise would reward a grantee who records a deed that falsely purports to be acknowledged.  And, pursuant to Graves, an improvidently recorded deed cannot provide constructive notice to subsequent grantees.  We therefore conclude that the latent defect in the

---

[10] Harold makes no argument that the July deed was recorded with a certificate proving its due execution.

certificate of acknowledgment of the July deed prevented it from giving constructive notice to Deborah of the prior conveyance.

Harold argues that, even if the July deed was not properly acknowledged, that defect does not affect his claim to the property.  He argues, first, that he was not required to record the July deed in order for it to provide superior title, and, second, that the recording statute's safe harbor provision protects his right to the property given the time that elapsed between the recording of the July deed and the action on appeal here.  We disagree with both contentions.

b.  <u>Requirement to record deed</u>.  As we have noted, the recording statute provides:

> "A conveyance . . . shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it . . . is recorded in the registry of deeds for the county or district in which the land to which it relates lies."

G. L. c. 183, § 4.  Harold argues that proper recording is not required for the July deed to be valid against Deborah because she qualifies both as the grantor's heir and as the grantor's devisee.  But Deborah's status as Ethel's heir (as her daughter) and devisee (as a named beneficiary of other property under Ethel's will) does not determine whether the requirement to record applies to this transaction.  Deborah did not receive the disputed property by virtue of either of these statuses; she received it through an inter vivos transfer.  Harold does not

point to any authority establishing that a grantee's status as an heir or devisee, with respect to <u>unrelated</u> property, eliminates the protections of the recording statute for that grantee. We conclude that it does not.

"We interpret a statute according to 'all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" <u>Johnson</u> v. <u>Kindred Healthcare, Inc</u>., 466 Mass. 779, 783 (2014), quoting from <u>Board of Educ</u>. v. <u>Assessor of Worcester</u>, 368 Mass. 511, 513 (1975). The purpose of the recording statute is "to allow persons without actual knowledge to the contrary to rely upon registry records." <u>Moore</u> v. <u>Gerrity Co</u>., 62 Mass. App. Ct. 522, 526 (2004). The enforceability of unrecorded deeds against the grantors, as well their heirs and devisees, is closely linked with the rationale for enforcing unrecorded deeds against those with actual knowledge -- preventing fraud. See <u>Killam</u> v. <u>March</u>, 316 Mass. 646, 650 (1944), quoting from <u>Lawrence</u> v. <u>Stratton</u>, 6 Cush. 163, 167 (1850) ("a party with such notice could not take a deed without fraud"). Interpreting the statute as Harold suggests would undermine the purpose of the statute, removing protection for grantees like Deborah who were uninvolved with the original

conveyance and had no knowledge of it. That result cannot be what the Legislature intended in establishing the recording system. See Ward v. Ward, 70 Mass. App. Ct. 366, 370 n.7 (2007) (tracing the purpose of the recording act to its creation in 1640).

Harold also argues that proper recording is not required for the July deed to be valid against Deborah because she had actual notice of the prior conveyance. This argument also fails. The burden of showing actual notice is on Harold. Tramontozzi v. D'Amicis, 344 Mass. 514, 517 (1962). Actual notice is to be "construed with considerable strictness [and mere] [k]nowledge of facts which would ordinarily put a party upon inquiry is not enough." Ibid., quoting from McCarthy v. Lane, 301 Mass. 125, 128 (1938). Deborah did not know of the prior conveyance at the time the November deed was executed. Nor did she or any of her siblings who were beneficiaries of the Trust know of the prior conveyance to Harold at any point before Harold revealed its existence after Ethel's death, eight years later. Harold's argument that Deborah had knowledge by virtue of Ethel's knowledge is unavailing. The question we face is not whether the conveyance to Harold is valid against Ethel, but,

rather, its validity against <u>Deborah</u>.  Harold has not carried

his burden of showing that Deborah had actual notice.[11]

    c.  <u>Safe harbor</u>.  Harold argues that even if he was

required to record the July deed, as we have concluded, he is

protected by the safe harbor of G. L. c. 184, § 24, under which

a defective acknowledgment cannot be challenged after ten years.

See <u>Howson</u> v. <u>Crombie St. Congregational Church</u>, 412 Mass. 526,

529 (1992) (recorded deed with defective acknowledgment cured

within ten years if not challenged within that time).  General

Laws c. 184, § 24, inserted by St. 1956, c. 348, § 1, provides:

> "When any owner of land . . . signs an instrument in
> writing conveying or purporting to convey his land or
> interest . . . and the instrument, whether or not entitled
> to record, is recorded . . . and a period of ten years
> elapses after the instrument is accepted for record, and
> the instrument or the record thereof because of defect,
> irregularity or omission fails to comply in any respect
> with any requirement of law relating to seals, corporate or
> individual, to the validity of acknowledgment, to
> certificate of acknowledgment . . . such instrument and the
> record thereof shall notwithstanding any or all of such

---

[11] In his reply brief, Harold further argues that Deborah had actual notice because Ethel's knowledge of her prior conveyance to Harold should be attributed to Deborah given that Ethel also conveyed the property to herself and to Deborah as cotrustees.  "Any issue raised for the first time in an appellant's reply brief comes too late, and we do not consider it."  <u>Pasquale</u> v. <u>Casale</u>, 72 Mass. App. Ct. 729, 738 (2008), quoting from <u>Assessors of Boston</u> v. <u>Ogden Suffolk Downs, Inc.</u>, 398 Mass. 604, 608 n.3 (1986).  Even if we considered this argument, it would fail.  Even if the knowledge of one cotrustee can be attributed to other cotrustees in certain circumstances, we would not do so here, where the disputed knowledge pertains to an event that occurred before the cotrustee relationship began.

defects, irregularities and omissions, be effective for all purposes to the same extent as though the instrument and the record thereof had originally not been subject to the defect, irregularity or omission, <u>unless within said period of ten years a proceeding is commenced on account of the defect, irregularity or omission</u>, and notice thereof is duly recorded in said registry of deeds and indexed and noted on the margin thereof under the name of the signer of the instrument and, in the event of such proceeding, <u>unless relief is thereby in due course granted</u>."

(Emphasis added.)  This proceeding was commenced in January, 2010, within ten years of the recording of the July deed on August 10, 2001.  Nonetheless, Harold contends he can take advantage of the safe harbor provision.

First, Harold argues that while this proceeding was commenced within ten years, it was not "commenced on account of the defect, irregularity or omission."  He argues that the proceeding was brought with respect to the alleged forgery of the July deed and that <u>that</u> defect does not encompass the fatally defective acknowledgment.  We disagree.  Even if we agreed with Harold's narrow reading of the phrase "on account of the defect, irregularity or omission," his argument fails.  This argument is foreclosed by our conclusion <u>infra</u>, see part 2, that the issue of the defective acknowledgment was tried by implied consent.

Second, Harold argues that the safe harbor statute requires that relief be granted within the ten-year period.  Once again, we disagree.  Even if a proceeding is properly commenced within

ten years, the statute allows a defect to be cured "unless relief is thereby in due course granted."  The language of the statute indicates that only the commencement of a proceeding must be within ten years; the relief granted as a result of a successful proceeding need only be granted "in due course."  The purpose of this last clause is plain:  while a timely but ultimately unsuccessful proceeding may forestall the application of the safe harbor, it cannot foreclose it.  Here, as the statute requires, a proceeding "on account of the defect" was commenced within ten years,[12] and relief was in due course granted.  Thus, the safe harbor provision does not apply and the defective acknowledgment was not cured.

2.  Scope of the pleadings.  Harold argues that the judge improperly rendered a decision that exceeded the scope of the pleadings in concluding that a defective acknowledgment gave Deborah superior title to the property.  We disagree.

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974).  See National Med. Care, Inc. v. Zigelbaum, 18 Mass. App. Ct. 570, 578-579 (1984)

---

[12] We note in passing that the trial "on account of the defect" was held in May, 2011, also less than ten years after the August, 2001, recording of the July deed.

(issue tried by express or implied consent of parties treated as raised in pleadings "without regard to whether the pleadings are amended to conform to the evidence").[13]  "To find implied consent where the pleadings are not amended, it must '[a]t least . . . appear that the parties understood [that] the evidence [was] aimed at the unpleaded issue.'"  Harrington-McGill v. Old Mother Hubbard Dog Food Co., 22 Mass. App. Ct. 966, 968 (1986), quoting from MBI Motor Co. v. Lotus/East, Inc., 506 F.2d 709, 711 (6th Cir. 1974).

The record here shows that, to the extent not raised by the pleadings, the issue of the acknowledgment was tried by implied consent.  In the complaint, Deborah alleged that Harold had "illegally converted the property for his own use" and that he had "by fraud and forgery attempted to take the property."  This is not a case where "[s]erious problems [were] created [because the] judge base[d his] decision on an issue that [was] not before the court."  Messina v. Scheft, 20 Mass. App. Ct. 945, 946 (1985).  Harold was not "effectively foreclosed from presenting any evidence on the very issue that [was] dispositive of the case."  Ibid.  In fact, the propriety of the acknowledgment first emerged during the direct examination of Attorney Maloy, a witness called by Harold.  On direct

_____

    [13] Nonetheless, it would be better practice to move to amend the pleadings to conform to the evidence.

examination, Maloy testified that he did not recollect Ethel's signing the deed on July 23, 2001, the date on which he notarized the deed. He also testified it was possible that Ethel might have signed the deed on a date other than July 23. On cross-examination, Deborah pursued this inquiry further.

The question whether Ethel signed the deed, particularly in the fashion that Harold maintained at trial, was inextricably intertwined with the question whether it was properly acknowledged. Substantial evidence was admitted regarding Ethel's whereabouts on July 23 with respect to whether she could have signed the deed in Massachusetts on that day. The failure to object to this evidence suggests consent. See Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487-488 (1988). The issue of the acknowledgment was litigated at trial. Indeed, Deborah's proposed findings of fact indicate her awareness that the acknowledgment was at issue. Her proposed finding no. 37 states:

> "Ethel Allen was never in the presence of attorney Maloy on July 23, 2001. I do not credit attorney Maloy's testimony that she executed the deed in his presence. He is a friend and business partner of Harold, Jr. Ethel and Harold, Sr. terminated his representation of them in 1993. The handwritten note attorney Maloy says was delivered to him by Ethel is undated and has attached to it a mortgage, even though the note itself refers to a deed. He could not specifically remember the execution, and suggested that Ethel may have signed it some other day than the date set

forth in his purported acknowledgement.  Ethel could not have signed the deed on July 23, 2001."

(Emphasis added.)  Just as Deborah knew that the acknowledgment was at issue, so should Harold have been aware that it was at issue.  We conclude that the question of the acknowledgment was tried by consent and was properly before the judge.

3.  Evidentiary support.  During a four-day trial, the judge heard testimony from ten fact witnesses and three expert witnesses.  Harold contends that the ensuing judgment was unsupported by the evidence because several of the judge's findings were erroneous.  Reviewing the findings under the clearly erroneous standard, Cahaly v. Benistar Property Exch. Trust Co., 85 Mass. App. Ct. 418, 424 (2014), we discern no reversible error.

Harold's argument centers on finding of fact no. 58, reproduced in full here, given its importance to this dispute:

"While the analysis of the handwriting convinces me that Ethel Allen's signature on the July 23, 2001 Deed is authentic, I am convinced that she did not sign the Deed in the presence of Attorney Maloy on July 23, 2001.  Attorney Maloy's testimony admits the possibility that the Deed was not signed in front of him, and that the Deed was not signed on July 23, 2001, despite its date and certificate of acknowledgment.  Attorney Maloy had a long time personal and business relationship with Harold, Jr.  I am convinced and find that Ethel signed the Deed in front of Harold, Jr., without Attorney Maloy being present, and Harold, Jr. brought the signed Deed to his attorney, represented that Ethel had signed the Deed, and asked for Attorney Maloy to notarize the acknowledgment, which he then did.  I find that the certificate of acknowledgment, which recites that Ethel appeared personally before Attorney Maloy in his

> capacity as notary public, and that she acknowledged in his
> presence the Deed as her free act, was inaccurate.  She did
> not appear personally before him at any time to acknowledge
> the Deed, and the certifications on this point are false."

The judge heard substantial testimony with respect to the signing and purported acknowledgment of the deed.  The judge determined that Maloy's testimony about the signing and acknowledgment, described above, was an "equivocal, unsatisfying account of what happened."  The judge also heard testimony with respect to Ethel's whereabouts in the days surrounding the purported signature and acknowledgment -- shedding light on whether she could have signed the deed and acknowledged it to Maloy in Arlington, Massachusetts, as Harold claims.  The judge explicitly discredited testimony of one of Ethel's daughters, Sandra Madigan, and of Harold's mother-in-law that placed Ethel as living in the disputed property at the time of the purported acknowledgment.  The judge instead credited testimony of other family members that placed Ethel as living with her daughter Nancy in Nashua, New Hampshire, at that time, including testimony that Ethel slept in Nashua during the nights surrounding the disputed signing and that she spent the day of the purported signing in New Hampshire.

"[T]he judge's assessment of the quality of the testimony is entitled to our considerable respect because 'it is the trial judge who, by virtue of his firsthand view of the presentation

of evidence, is in the best position to judge the weight and credibility of the evidence.'" Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203 (1986), quoting from New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977).[14]  Based on the evidence presented, the judge concluded that Ethel had not acknowledged the deed in front of Maloy.  "The judge's advantage in weighing the testimony is particularly evident in a case involving conflicting testimony, 'one in which widely differing inferences could be drawn from the evidence,' and the drawing of inferences cannot be separated from the evaluation of the testimony itself."  Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. at 510, quoting from Goddard v. Dupree, 322 Mass. 247, 248 (1948).  "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  Edinburg v. Edinburg, 22 Mass. App. Ct. at 203,

---

[14] Harold also contests the judge's finding, in finding of fact no. 57, that "[n]obody testified that they saw Ethel Allen in Massachusetts on . . . July 23, 2001," arguing that Maloy had testified that Ethel was in Arlington that day.  But reading the entirety of finding of fact 57 in context, we read it to mean that no one other than Maloy testified to having seen Ethel in Massachusetts on July 23.  Nor did anyone testify to taking actions that could have enabled her to be at the location of the purported signing, in Arlington, on that day.  (Ethel did not drive at that time.)  Even Maloy's testimony on that point was, at best, "equivocal."  Even assuming this finding was strictly speaking erroneous because of Maloy's testimony, it is of no moment.  The judge did not attribute much weight or credibility to Maloy's testimony in the first place.  Had the judge amended this finding as Harold suggests, it would have no impact on the result.

quoting from Anderson v. Bessemer City, 470 U.S. 564, 573-574 (1985). The finding that the deed was not properly acknowledged was not clearly erroneous.

After considering the conflicting evidence regarding the signing and acknowledgment, as well as the background relationships among the family members and others,[15] the judge found that Ethel had signed the deed in front of Harold and that he brought the deed to Maloy for notarization. We acknowledge that the evidence supporting this conclusion is less firm than that supporting the more fundamental conclusion that Ethel did not sign or acknowledge the July deed before Maloy. Nonetheless, the evidence in the record with respect to both Harold's close relationship with Maloy and Ethel's whereabouts in the days surrounding the purported signing and acknowledgment supports the judge's finding as to how the signing and notarization unfolded. See Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 188 (2013) (finding was not clear error where it was supported by ample circumstantial evidence). Moreover, even if we were to conclude that the judge's finding as to how Maloy ultimately notarized the document was clear error because it was speculative, it would not be cause for us

---

[15] Maloy performed legal work for Harold, Sr., and Ethel prior to 1993 but did little work for them between 1993 and 2001. He remained a friend of the family and a joint venturer with Harold in several real estate projects.

to disturb the judgment.  Because we have concluded that the finding that Ethel did not sign or acknowledge the deed before Maloy was not clear error, whether Ethel signed it before Harold, as the judge found, is immaterial.  Because Harold has not demonstrated that any of the findings that support the judgment are clearly erroneous, we reject his argument that the judgment is not supported by the evidence.

4.  Amendment of counterclaim.  Notwithstanding Harold's argument to the contrary, the judge did not abuse his discretion in denying Harold's motion to amend his counterclaim -- in order to add an undue influence claim regarding the November deed -- without prejudice to raising the claim in a separate action.[16] The judge's concerns that the motion was excessively late with respect to the impending trial and that the proposed counterclaim entailed unrelated questions of fact were reasonable.  See Audubon Hill S. Condominium Assn. v. Community Assn. Underwriters of America, Inc., 82 Mass. App. Ct. 461, 471-472 (2012).[17]

Judgment affirmed.

_____

[16] We note that Harold has commenced such an action in the Land Court.

[17] To the extent we do not address other contentions made by Harold, they "have not been overlooked.  We find nothing in them that requires discussion."  Department of Rev. v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004), quoting from Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

<u>Order denying
postjudgment motions
affirmed</u>.