NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1131

ADOPTION OF BRYCE.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a decree of a Juvenile Court judge terminating his parental rights to his son, Bryce, who was twelve years old at the time of trial, and from the order denying his motion for a new trial.[2] The father was incarcerated during trial and has been incarcerated for all but four years of Bryce's life. On appeal, the father argues that he is entitled to a new trial because (1) the Department of Children and Families (department) did not use reasonable efforts to preserve the biological ties between him and the child before seeking termination, (2) the judge made several clearly erroneous findings that were essential to the finding of unfitness, and the remaining evidence does not support termination by clear and convincing evidence, (3) he was denied his right to effective

---

[1] A pseudonym.
[2] The mother's parental rights were not terminated. She stipulated to her current unfitness and a judgment entered accordingly.

assistance of counsel, and (4) he was denied due process when the department changed the child's permanency plan after trial. We affirm.

Discussion. 1. Reasonable efforts. "The department is 'required to make reasonable efforts to strengthen and encourage the integrity of the family before proceeding with an action designed to sever family ties.'" Adoption of West, 97 Mass. App. Ct. 238, 241 (2020), quoting Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). Even when a parent is incarcerated, the department's regulations require it "to make all reasonable efforts to work in cooperation with incarcerated parents to promote a healthy relationship with their children, and to avoid permanent separation." 110 Code Mass. Regs. § 1.10 (2008). See Adoption of Franklin, 99 Mass. App. Ct. 787, 795 (2021). However, the department's duty is contingent upon a parent's fulfillment of their own parental responsibilities. See Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997), citing 110 Code Mass. Regs. § 1.01 (1993). The judge's reasonable efforts determination will stand unless clearly erroneous. See Adoption of Ilona, 459 Mass. 53, 62 (2011).

Here, the father's challenge to the department's use of reasonable efforts fails for two reasons. First, the issue was

2

raised for the first time on appeal, and so it is waived.[3]  See

Adoption of Gregory, 434 Mass. 117, 124 (2001).  Second, even if

the father's complaint had been preserved, and even if the

department had not engaged in reasonable efforts (a point we do

not decide), it does not follow that the father is entitled to

reversal of the decree terminating his parental rights.  See

G. L. c. 119, § 29C ("A determination by the court that

reasonable efforts were not made shall not preclude the court

from making any appropriate order conducive to the child's best

interest").  See also Adoption of Ilona, 459 Mass. at 61.  We

conclude that the judge did not err in determining that

termination was in Bryce's best interests.  The grounds on which

the judge determined the father to be unfit were not related to

the department's use of reasonable efforts, but instead focused

on the father's history of domestic violence, current and

extended incarceration, substance abuse issues, and mental

health concerns.

2.  Parental unfitness.  "While a decision of unfitness

must be supported by clear and convincing evidence, a judge's

findings will be disturbed only if they are clearly erroneous."

---

[3] As discussed infra, we are not persuaded by the father's
argument that he was constructively denied effective assistance
of counsel and that we may therefore consider the lack of
reasonable efforts by the department despite the father's
failure to preserve the issue.

3

Adoption of Franklin, 99 Mass. App. Ct. at 798, quoting Adoption of Paula, 420 Mass. 716, 729 (1995). "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Adoption of Larry, 434 Mass. 456, 462 (2001), quoting Custody of Eleanor, 414 Mass. 795, 799 (1993).

The father challenges several of the trial judge's findings of fact and conclusions of law; however, very few of these challenges are relevant to the unfitness determination. Accordingly, even where we discern error in certain discrete findings, we are satisfied that, taken as a whole, the evidence demonstrated the father's permanent unfitness by clear and convincing evidence. See Adoption of Nancy, 443 Mass. 512, 515 (2005), quoting Adoption of Peggy, 436 Mass. 690, 701, cert. denied sub nom. S.T. v. Massachusetts Dep't of Social Servs., 537 U.S. 1020 (2002) ("The finding of parental unfitness by clear and convincing evidence is the 'critical inquiry'").

a. Domestic violence. First, the trial judge's decision to terminate the father's parental rights was supported by evidence, not challenged on appeal, of the father's extensive history of domestic violence against the mother. The father has been arrested six times for assault and battery against the

4

mother, which resulted in the mother requiring medical attention on at least two occasions. The most recent of these incidents resulted in a grand jury indictment of attempted murder of the mother after the father assaulted her on a beach by punching her, putting sand in her mouth, and holding her face in the water.[4] It is also unchallenged that Bryce was present during several incidents of domestic violence by the father against the mother. Despite this documented pattern of domestic violence, the father testified that the problems in his relationship with the mother were the result of alcohol and other people. He additionally intended to resume a relationship with the mother upon his release from prison; his plans appear to have changed only after the mother obtained a restraining order against him. In light of this testimony, we also reject any challenge to the judge's finding that the father lacked insight into his domestic violence against the mother and the effect on Bryce of witnessing this violence. The findings reflect the judge's weighing of the evidence, which we will not disturb. See Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).

We agree with the father to the extent he argues that it was clear error for the judge to find that a particular report filed pursuant to G. L. c. 119, § 51A (51A report), supported

---

[4] At the time of trial, the father was incarcerated as a result of this incident.

5

allegations of abuse against Bryce, when in fact the 51A report only supported allegations of neglect.  However, where evidence of the father's domestic violence against the mother was overwhelming, we do not agree that this error negates the judge's finding that the father was unable to demonstrate an ability to recognize concerning behaviors or understand domestic violence.  Nor do we agree that this error negates the judge's finding that Bryce suffered "trauma" as a result of the father's parenting.  See Custody of Vaughn, 422 Mass. 590, 599 (1996) ("It is well documented that witnessing domestic violence, as well as being one of its victims, has a profound impact on children").

b.  Periods of incarceration.  Second, the trial judge's decision was supported by evidence of the father's extensive criminal record, which goes beyond domestic violence against the mother, and which resulted in the father's being incarcerated for most of Bryce's life, including at the time of trial.  The father testified that he had been in custody about ten times since Bryce's birth in 2010, and he estimated that he had lived with Bryce for only four years of his life.  As we have noted, at the time of trial, the father continued to be incarcerated.  The judge's findings related to the father's criminal history illustrated the father's inability to be present in the child's life and thus supported the determination of unfitness.  See

6

Adoption of Frederick, 405 Mass. 1, 7 (1989) (judge may consider "lengthy separation between parent and child" in making best interests determination).

c. Substance abuse issues. Third, the trial judge's decision was supported by evidence of the father's history of substance abuse issues, including his use of alcohol and opiates. The father testified that each of his acts of domestic violence against the mother was the direct consequence of his alcohol use and not being sober. He also testified that while incarcerated, he attended Alcoholics Anonymous (AA) and Narcotics Anonymous (NA), and that he participated in a program titled "Breaking Free" for drug and alcohol education. On appeal, the father challenges the judge's finding that he "did not engage in substance abuse treatment." Given the father's testimony, the absence of any evidence negating that testimony, and the judge's acknowledgment that the father did attend "AA," we agree with the father that this finding was clearly erroneous.[5] We do not, however, agree that this error warrants

_____

[5] Although the social worker testified that she was unaware if the father was participating in treatment, her lack of knowledge does not conflict with the father's testimony, so there is no evidence to support the judge's finding. Cf. Allen v. Allen, 86 Mass. App. Ct. 295, 307 (2014), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997) ("The judge's advantage in weighing the testimony is particularly evident in a case involving conflicting testimony, 'one in which widely differing inferences could be drawn from the evidence,' and the

reversal.  We read the judge's decision to reflect the judge's

concern that the father failed to meaningfully address his

history of substance abuse through programming.[6]  See Adoption of

Ulrich, 94 Mass. App. Ct. 668, 677 (2019) ("mere participation

in . . . services does not render a parent fit 'without evidence

of appreciable improvement in [their] ability to meet the needs

of the child'" [citation omitted]).

     d.  Mental health concerns.  Finally, the trial judge's

decision was supported by evidence of the father's unaddressed

mental health concerns.  The father was diagnosed with attention

deficit hyperactivity disorder as a child but was not taking

medication for this condition at the time of trial.  At one

point, he was involuntarily committed to a hospital because he

stabbed himself with a knife during an argument with the mother.[7]

The father does not have diagnoses for depression or anxiety,

but he was prescribed antianxiety medication while incarcerated,

---

drawing of inferences cannot be separated from the evaluation of
the testimony itself").

[6] We are not persuaded by the father's argument that the judge's
attribution of reasonable efforts to the department influenced
his finding that the father did not adequately participate in
programming.  The judge explicitly acknowledged that the father
did participate in some programming despite having limited
access to services while incarcerated.  As importantly, the
judge made clear that the real concern was the father's failure
to benefit from the programs in which he did participate.  See
Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019).

[7] The father had a psychological evaluation after this incident;
he was not diagnosed with any mental health condition in
connection with that evaluation.

which he reported was helpful for his "rapid thoughts."  The father stopped taking this medication after about ninety days because he reported that it gave him migraines.  The father now challenges the judge's finding that he stopped taking his antianxiety medication, because he testified at trial that he was at that time on a wait list for a new evaluation to receive new medication.  Although the judge did not acknowledge the father's status on the wait list in his findings, he did recognize that the father only stopped taking his medication because of migraines.  We see no clear error in the judge's fundamentally accurate, albeit truncated, finding.  Because the evidence of unfitness in this case was overwhelming, "[a]ny limited factual errors or inconsistencies that the father . . . [is] able to show are arguable and of minimal consequence."  Adoption of Franklin, 99 Mass. App. Ct. at 798.[8]  See Care &

---

[8] The father's argument that it was clearly erroneous for the judge to find that the father "lacks the ability and readiness to parent" because the child only has "small issues" is waived for lack of adequate appellate argument or legal support in the father's brief.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("The appellate court need not pass upon questions or issues not argued in the brief").

We reject the father's argument that the judge's attribution of reasonable efforts to the department influenced his finding that the father did not follow through with paperwork for Zoom visits with the child.  Even if this were the case, such a failure would not warrant reversal because "the absence of recent visitation played a minimal role in the termination of the father's rights."  Adoption of Franklin, 99 Mass. App. Ct. at 799.

Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003) (affirming termination decree where "clearly erroneous findings, considered singly or in the aggregate, [we]re not central to the ultimate conclusion of unfitness").

2. Ineffective assistance. Next, the father argues that he was denied effective assistance of counsel because his attorney was disrespectful towards him during cross-examination and closing argument, failed to file adequate motions in limine or to object to inadmissible prejudicial evidence, and failed to investigate effectively before trial. To prevail on his ineffective assistance of counsel claim, the father must show that (1) counsel's conduct fell measurably below the standard of an ordinary fallible lawyer, and (2) this shortcoming prejudiced him in some way. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Regarding the second prong, "prejudice is not shown if there is overwhelming evidence of unfitness." Adoption of Azziza, 77 Mass. App. Ct. 363, 368 (2010). Given our conclusion that there was overwhelming evidence of unfitness in this case, we also conclude that the father has failed to show that he was prejudiced by any of his counsel's alleged errors.[9]

_____

[9] Because we conclude that the father was not prejudiced in this case, we need not and do not reach the question whether his counsel's conduct fell measurably below the standard of an ordinary fallible lawyer.

10

We are not persuaded by the father's argument that he is excused from any obligation to prove prejudice because counsel's errors were so egregious that they amounted to constructive denial of counsel.  Generally, constructive denial of counsel occurs when counsel has a conflict of interest, Commonwealth v. Mosher, 455 Mass. 811, 819 (2010); is completely unprepared for the entire trial, Commonwealth v. Valentin, 470 Mass. 186, 197 (2014); or is sleeping or absent, Commonwealth v. Lacoy, 90 Mass. App. Ct. 427, 440 n.20 (2016).  None of these apply here. By contrast, the father's counsel filed and prevailed on motions in limine to exclude damaging evidence from trial, cross-examined witnesses, objected at trial, met with the father's caseworker, and spoke with the preadoptive family.  This is not a case in which counsel has "entirely fail[ed] to subject the [department's] case to meaningful adversarial testing."  United States v. Cronic, 466 U.S. 648, 659 (1984).  The usual two-pronged test under Saferian, including the father's obligation to show prejudice, is required.

3.  Due process.  Finally, the father argues that he was denied due process because he was not given a meaningful opportunity to defend against the department's permanency plan for the child.  At the time of termination, the plan for the child was permanency through adoption by the child's foster parents.  However, it was made clear to the father that even

11

though the current plan was adoption, there remained a possibility that the plan would change to a guardianship or to reunification with the mother.[10]  In fact, after trial and after termination of the father's rights, due to changes in circumstances, the plan did change from adoption to reunification with the mother.  We are not persuaded that this posttrial change in circumstances demonstrated that the original adoption plan was "illusory" and intended to penalize the father.  It is clear from the record that the father was on notice of the possibility that the child's permanency plan would change to reunification with the mother; accordingly, his due process rights were not violated.  Contrast Adoption of Jacqui, 80 Mass. App. Ct. 713, 717-718 (2011) (due process violation where father was not informed that department might change its goal from reunification to adoption).

Furthermore, as discussed above, the judge's decision to terminate the father's parental rights was amply supported by evidence of his parental unfitness.  Accordingly, once these rights were terminated, the father had no further right to determine the child's future.  See Adoption of Scott, 59 Mass.

---

[10] The father was aware that the mother stipulated to being unfit and waived her right to a trial, and that her parental rights were not being terminated; the mother's stipulation and the fact of her retention of her parental rights was explicitly referenced multiple times throughout the trial.

App. Ct. 274, 276-278 (2003).  Allowing the father to challenge a change to the child's permanency plan after termination of the father's parental rights would violate G. L. c. 119, § 26 (b)(4); the father had no right to have any input as to the final plans for the child regarding custody or visitation.  See Adoption of Willow, 433 Mass. 636, 647-648 (2001) ("The Legislature surely did not contemplate that whenever there is a change in circumstances and a new option arises . . . the department is required to return to square one and relitigate the rights of an unfit parent").

Decree affirmed.

Order denying motion for new trial affirmed.

By the Court (Hand, Hershfang & Brennan, JJ.[11]),

Assistant Clerk

Entered:  February 21, 2024.

---

[11] The panelists are listed in order of seniority.